M’Kean, C. J.
Since the act of assembly passed in 1705, foreign attachments have been governed by the same rules as in London, and other cities in .England, where they have been used, as nearly as convenience and the words of the act would admit. In all these places as well as here, it has been the established custom, that a garnishee is not liable to pay interest pending an attachment.
During this period, the property attached is in the custody of the law. The debtor cannot pay his debt to the original creditor with safety, because he might be liable to pay it twice, and the law does not require any thing so unreasonable. A garnishee may be considered in the light of a stakeholder. The custom is ancient, it is founded in reason and justice, and has invariably prevailed.
If after a foreign attachment has issued, and been executed in the hands of a garnishee, the original creditor sues, the garnishee for the debt, he may plead the attachment in abatement; and if there is any fraud or. collusion in the transaction, the plaintiff should reply, that the attachment is kept on foot by fraud, which may be put in issue and determined by a jury, and if found for the plaintiff, he will recover his debt and legal interest, provided the contract will entitle him *2801 to ^ ^ * plaintiff in a foreign attachment J has obtained judgment against the garnishee, and received the money, or execution has been executed, and the original creditor shall afterwards sue the garnishee for the debt, he may plead the condemnation in the foreign attachment, and this will be an effectual bar for the amount. Besides which, the garnishee, by an act of assembly, will be entitled to his reasonable expences.
This, I conceive, to be the rule in such cases.
It appears, that the defendant in the present action, has been summoned as a garnishee of Vance, Caldwell and Vance, in six foreign attachments, and the plaintiff’s counsel have agreed he has pleaded them properly. There has been no replication, that they or any of them have been kept on foot by fraud; but the evidence to establish that fact is by consent, now submitted to the court; and the question before us, is, whether the defendant under all the circumstances of the case, is liable to pay interest to the plaintiff, while the attachments were depending?
The general rule is agreed, that a garnishee is not to pay interest, pending a foreign attachment. But it is contended, that the defendant ought to do it in this case, for several reasons. 1st, That the first attachment was taken out by the defendant. 2dly, That the great delay was solely owing to him. And, 3d'ly, That a verdict has been given in this attachment, finding that the garnishee had no goods or effects of Vance, Caldwell and Vance in his hands; and of course, chat it was wrongfully brought, and ought to have no more operation than if it had never existed.
*280 There have been six foreign attachments brought, in each' of which the defendant has been summoned as a garnishee, and no fraud or collusion has been alledged in the five last, one of which was brought by the real plaintiff in this action, as early as the 30th October 1783, and is still depending. The note to the plaintiff was payable on the 8th April preceding, so that there was but 6 months and 23 days interest then accrued, which is the whole time for which interest can be demanded from the defendant; because in Moore’s and Johnston’s attachment there could be no collusion. With respect to John Caldwell’s attachment, there does not appear sufficient evidence to ground an opinion that it was commenced by collusion. Fraud is not to be presumed, it must be proved. It is certain there was then a just debt of near 2000I. due to him, and the only thing which prevented his recovering in the attachment was, that the debt due from Andrew and James Caldwell to Vance, Caldwell and Vance had been ten months before assigned in equity to Moore and Johnston, according to the opinion of the jury. But at any *rate this circumstance was unknown to both John r*noi Caldwell, and Andrew Caldwell, and James Caldwell *- at that time, and for years after, which put it out of their power even to suspect it. When it is considered also, that John and James Caldwell were brothers, and that Richard Caldwell, of the house of Vance, Caldwell and Vance, was another brother, it cannot be imputed to James Caldwell as a crime, that he wished to secure a just debt due from one brother to another; the contrary would seem rather unnatural. But it appears to me, that James Caldwell had authority to commence this attachment for John, from letters he had theretofore received from him, and which have been read in court. Be this as it may, no objections on the score of fraud have been raised against William Caldwell’s attachment, which was taken out on the same day with that of John Caldwell.
2dly, As to the delay, there is little ground for ascribing it to the defendant in this action. It was rather owing to the plaintiff himself, by first bringing his attachment ana keeping it on foot, and by bringing a wrong action in the name of Hamilton, which depended till August 1787, and was then discontinued; and lastly, by not speeding his present action. He and his counsel were probably doubtful in what way to prosecute his claim, so as best to serve him. It has indeed been an intricate affair.
3dly, As to the event of John Caldwell’s attachment, it was impracticable for the defendant to foresee it. The plaintiff in this action has been so fortunate as to obtain a verdict for the defendant in John Caldwell’s suit. But how could the defendant know that this would be the case, until it was determined? It was really a nice question. Let a foreign at *281 tachment be determined whatever way, the garnishee is excusable by law, from paying interest in the mean time. The defendant in such attachment has his remedy against the plaintiff or the sheriff. The garnishee is brought into court by compulsion, and should not suffer for doing what the law enjoins.
On the whole, I can discover nothing to make this case an exception to the general rule, and am therefore of opinion that the defendant is not liable to pay interest to Vance, Caldwell and Vance, or their assignees, while the foreign attachments were depending, as they were brought for more money than the defendant owed.
Shippen, J.
The same evidence often makes different impressions on different minds. I do not impute fraud to the defendant; but it appears to me, that Andrew and James Caldwell have acted officiously in this business under all its *9891 circum*stances; and I do not think that the steps they J themselves have taken, should exempt them from the payment of interest, at least until the time of commencement of the attachment in 1785.
Yeates, J.
The general principle I take to be as stated by the Chief Justice, that money bona fide attached, while in greemio legis, is not subject to the payment of interest. There may be possibly, however, exceptions to this rule, as between the garnishee and the defendant in the attachment, as when such garnishee gives no notice of the attachment for a considerable length of time to such defendant, and thereby prevents him from entering special bail, or defending the suit. (Vid. Hen. Blackst. 683.)
There is not sufficient evidence of fraud in the defendant, or his deceased partner, and the law will not presume it. The circumstance of the defendant’s interfering with respect to the attachment taken out by John Caldwell, weighs not greatly in my mind, when I consider the proofs and letters produced, and the relation which subsisted between his co-partner and the plaintiff in that attachment.
Moore and Johnston actually brought their attachment on the 30th October 1783, and levied on this property as a debt due from Andrew and James Caldwell, to Vance, Caldwell and Vance, and at the same time they claim it by virtue of a secret equitable assignment. By this suit they affirm the property to be in Vance, Caldwell and Vance, which they have disaffirmed on their defence on the trial of John Caldwell’s attachment. While the different attachments were depending, and no one could foresee the event, it appears to me highly unreasonable to have expected that the garnishees should pay the money, without the fullest indemnification; and therefore, I am of opinion, that no interest is demandable of them pending the attachment.
Cited in II S. & R., 189, where it was decided that a foreign attachment which, after pending some time has been compromised, is a good plea in bar, so far as respects interest, to an action against the garnishee, to recover the debt attached; and it is error to refuse to permit such a plea to be entered at the trial.
Explained in 13 S. & R., 226, where Duncan, J., says: “Fitzgerald v. Caldwell, as reported in 1 Yeates, 274, seems to convey the opinion of Chief Justice McKean, that the interest only ceases on the sum for which the attachment is laid; he says no interest is 'to be allowed in that particular case, because the attachment was laid for a larger sum than the debt attached.”
Cited in 2 W. & S., 208, to support the proposition that if the judgment in an attachment is equal to, or exceeds the amount demanded from the garnishee on the original debt, it is a flat bar; if for less, it is a bar pro ta?ito only.
Cited in 9 Pa., 470, where the court says : “ Ret a foreign attachment be determined which way it may, the garnishee is excused from paying interest in the mean time.”
*282 Bradford, J.
declined giving any opinion, as he was formerly concerned as counsel in the cause.
Note. — A writ of error was taken out hereupon, returnable to the High Court of Errors and Appeals; where it appeared by a written memorandum signed by counsel, that it was agreed that “the judgment entered for the sum found by the “referees, should be absolute, but await the trial of the at- ‘ ‘ taclnneuts, and that if any thing should be recovered there“on against the said Andrew Caldwell, the same should be “defalked, out of the said sum for which judgment was rendered as aforesaid, and execution issue for the residue only.”
*This agreement did not come before the Supreme [-*000 Court during the preceding argument, nor was it men- L tioned by any of the counsel.
The Court of Errors and Appeals on the 18th July 1793, ruled, that the parties were bound by the express terms of that agreement, and that the Supreme Court could effect no alteration in the judgment which was to be entered provisionally thereon. Their decree was as follows:
That the last judgment or decretal order of the Supreme Court, ‘ ‘ that Andrew Caldwell shall be discharged from the “ said judgment, on the payment of 4016I. 9s. 4b. to wit, the “principal sum found due to Vance, Caldwell and Vance, by 1' the second report of the referees, and all costs of suit, ’ ’ be reversed.
That the judgment of the Supreme Court rendered in the term of January 1791, in favour of George Fitzgerald the plaintiff in error, for 5009I. 5s. id. with the costs of suit, and by the agreement of the parties stated in the record made absolute in January term 1792, be and the same is hereby (according to the terms of the said agreement) affirmed and made stable.
And that the records and proceedings in this cause, and all things concerning the same, be remitted into the Supreme Court, that such further proceedings may be had thereon, as well for execution as otherwise, as to justice shall appertain: each party to pay their own costs on the writ of error.
Cited also in 44 Pa., 83, where it was decided that if a fund attached exceed the amount of the attaching judgment, interest is not chargeable from the maturity of the note to the time of the settlement, on so much as was necessary to pay it, but only on the unappropriated balance.
MEMORANDUM.
The Supreme Court opened in Philadelphia on the first day of September term 1793, but adjourned to the last day of the term, by reason of a malignant fever which then greatly raged, and carried off a great number of the citizens. No other business was done except receiving sheriff’s returns, and the entering of motions made by the different counsel.