## The Pennsylvania Railroad Company *versus* Pennock.

1. The foundation for the process in foreign attachment is that the defendant is beyond the reach of process and his property within it. But if the property be without the reach of the process, there is an end of the attachment-writ.

2. The return of the sheriff in a foreign attachment was, "Executed by delivering to D. A. Stewart, agent of the Pennsylvania Railroad Company, a true and attested copy of the within writ, and making known the contents thereof, and summoning the Pennsylvania Railroad Company as garnishee." *Held*, that this was not a proper service.

3. The property in this case was susceptible of seizure if present; and not being present, and there being no seizure or declaration in the presence of witnesses, it was not bound by the writ, and therefore no person was bound to answer as garnishee.

4. In foreign attachment, the first thing is to "*serve*" the property, the next, the person in whose hands it is found; but such attachment may be well executed when the officer is prevented by fraud or force from getting at the property.

5. In such cases, the return should show the facts, and that the officer has attached as nearly according to the requirements of the statute as possible; if the property is in the hands of the garnishee, he cannot take advantage of his own wrong on the ground of a defective service.

6. The expression in the act, "susceptible of seizure and manual occupation," relates to the nature of the property, and not to its circumstances; if it cannot be seized because without the jurisdiction of the court, the process must end, unless there be a fraudulent removal or concealment.

7. There must be an actual seizure of goods intended to be attached; but the seizure of part of a certain thing would bind the whole when it came to hand.

8. Distinct parcels of *goods* coming into the hands of the garnishee after the service of the attachment are not bound by it.

9. Digby *v.* Childs, 12 Harris 23, doubted; the Act of April 12th 1855, ₴ 1, sets aside the rule there announced.

ERROR to the Court of Common Pleas of *Allegheny county.*

This was a *scire facias*, at the suit of Isaac M. Pennock against The Pennsylvania Railroad Company, garnishees in a foreign attachment by the plaintiff against Woods & Wright.

The writ in the foreign attachment issued April 15th 1864, and commanded the sheriff to attach "*certain oil*" and all other goods, &c., of defendants in the possession of the Pennsylvania Railroad Company and summon them as garnishees. The sheriff returned: "Executed, April 15th 1864, by delivering to D. A.

[Pennsylvania Railroad Co. *v.* Pennock.]

Stewart, agent of the Pennsylvania Railroad Company, a true and attested copy of the within writ, and making known to him the contents thereof, and by summoning the Pennsylvania Railroad Company as garnishee."

The plaintiff's claim, as set out in his declaration, was, that the defendants had agreed to purchase from him one thousand barrels of petroleum and had afterwards refused to receive or pay for any part of it. Judgment was taken against the defendants by default and the damages were assessed at $10,047.66, and final judgment entered thereon.

To the interrogatories filed in the *scire facias*, the garnishees answered that they had no effects of the defendants, Woods & Wright, in their hands on the 15th of April 1864, that were actually seized or attached by virtue of the writ of attachment; that before that day the company had received as carriers and for transportation to New York, twelve hundred and forty-five barrels and twelve casks of unknown measure and value, of crude petroleum, marked " Woods & Wright, New York," and had carried them out of the county of Allegheny, as far as the city of Philadelphia.

That on demand of the consignees under a threat of action and risk of liability for wrongful detainer, and on receiving a bond of indemnity, the garnishees did, on the 16th of April, forward the said oil to its destination.

That after the said 15th of April, to wit, at divers times from the 16th of April to the 27th of October 1864, the garnishees received as carriers many other lots of crude petroleum, amounting in all to two thousand four hundred and forty-one barrels and thirty-one casks, of unknown measure and value, shipped by and receipted to D. Kirk, and consigned to the said Woods & Wright, New York.

That the garnishees had no notice or reason to believe that the said Woods & Wright were the owners of the said oil, other than the fact of consignment to them, and that no part of said oil had ever been seized by the said sheriff under the said writ of attachment, and that it was not the duty of the garnishees to assume the risk of detaining goods so delivered for transportation, but that the assumption of such a risk is the duty of the plaintiff, or of the sheriff.

These latter consignments were also forwarded to their destination. No indemnity was asked on the forwarding of these, because they were not known to have been attached, and whether the indemnity previously given will apply to these the garnishees cannot say.

On this answer judgment was entered against the garnishees, that plaintiff have execution to be levied of the said goods and effects of the defendants, Woods & Wright, attached in the hands

[Pennsylvania Railroad Co. *v.* Pennock.]

or possession of the said garnishees, or of so much of them as shall be sufficient to satisfy the judgment obtained by the said plaintiff against the said Woods & Wright, together with interest and costs, and if the said garnishees refuse or neglect, on demand by the sheriff, to produce and deliver the said goods and effects of the said defendants, attached as aforesaid, then the same to be levied of the garnishees' own proper goods, effects and lands, according to law, as in case of a judgment against the said Pennsylvania Railroad Company for its own proper debt.

The following errors were assigned in the Supreme Court:—

1. There was no effectual attachment of any goods or effects in their hands, the petroleum claimed to have been attached not having been within the sheriff's county at the time of the service of the writ, and not having been actually seized or demanded by him, and a large part of it not having been then anywhere within the power of the garnishees.

2. There was no such service of the writ of foreign attachment as renders the railroad company liable to be called upon as garnishees in this case.

3. The said railroad company, as common carriers, cannot, by a mere notice of the writ of attachment, be held to answer as garnishees of their consignees for the value of the goods which they may be transporting in the course of their said business.

4. The said company, as common carriers, cannot be held by a mere notice, or copy service of the writ of attachment, to answer as garnishees in one county for goods which have already been transported out of that county.

5. The said company, as common carriers, cannot be held by mere notice or copy service of the writ of attachment, to answer as garnishees for goods that shall, after such service, come into their hands for transportation.

6. The said company do not admit, in their answer, that there was at any time any petroleum or other goods of the original defendants in their power or possession.

7. The said company do not admit, in their answer, any certain quantity or value of petroleum to have passed through their hands, and no such quantity or value has been found as matter of fact, in any proper way.

8. No certain quantity, or value, or kind of goods, is specified in the judgment of the court, of which the plaintiff is to have execution.

9. There is no valid final judgment against original defendants, no writ of inquiry of damages having been issued in the case.

*W. H. Lowrie* and *John H. Hampton,* for plaintiffs in error.— There was no attachment of defendants' property in the hands of the garnishees. The Foreign Attachment Act, § 45, Purd. 492,

[Pennsylvania Railroad Co. v. Pennock.].

pl. 4, requires sheriff to summon all persons in whose hands goods "may be attached;" the goods therefore must be attached before there can be a garnishee to answer. Mere copy service of the writ attaches nothing : Id. § 48-50, p. 493, pl. 8–11.

Seizure is necessary to a valid attachment of goods susceptible of seizure : Morgan v. Watmough, 5 Whart. 127 ; Sergeant on Attachment 14, 15 ; Maris v. Schermerhorn, 3 Whart. 13 ; Shriver v. Harbaugh, 1 Wright 401. In Hollister v. Goodall, 8 Conn. 332, Hosmer, C. J., says that to constitute an attachment of goods, the officer must have the actual possession and custody, citing the cases of Lane v. Jackson, 5 Mass. 157, 163 ; Train v. Wellington, 12 Id. 495, 497 ; Turner v. Austin, 16 Id. 181 ; Denny v. Warren, 16 Id. 420 ; Gordon v. Jenney, 16 Id. 465 ; Naylor v. Dennie, 8 Pick. 198 ; Merril v. Sawyer, 8 Id. 397. And then he decides that in a race for priority between two officers, he who first seizes the articles has the first attachment.

An attachment by its very terms implies the taking possession of the property by the officer : Heard v. Fairbanks, 5 Met. 113 ; Reed v. Howard, 2 Id. 36 ; Hemmingray v. Wheeler, 14 Pick. 408 ; Walker v. Fitts, 24 Pick. 191 : Shephard v. Butterfield, 4 Cush. 425 ; Darling v. Dodge, 36 Me. 337 ; Waterhouse v. Smith, 9 Shepley 337 ; Thomas v. Merchants' Bank, 9 Paige 216 ; Anonymous, 2 Hayw. (N. C.) 73 ; 1 U. S. Dig. 29 ; Cheatham v. Trotter, Peck (Tenn.) 198, 1 U. S. Dig. 30 ; Bank v. Ragsdale, Peck (Tenn.) 296, 1 U. S. Dig. 30 ; Anderson v. Scott, 2 Mo. 15, 1 U. S. Dig. 32 ; Maulsby v. Farr, 3 Mo. 438, 440, 1 U. S. Dig. 32 ; Crowninshield v. Strobel, 2 Brown (S. C.) 80 ; 4 U. S. Dig. 12 ; Nicholas v. Patten, 6 Shepley (Me.) 231 ; 4 U. S. Dig. 39 ; Mills v. Camp. 14 Conn. 219 ; Platt v. Brown, 16 Pick. 553 ; 7 Ala. 706 ; 9 Mass. 258 ; 14 Id. 190, 356 ; 16 Id. 420, 465 ; 11 Met. 244 ; 19 Vt. 510 ; Wolbert v. Fackler, 8 Casey 452 ; 5 Halst. 337 ; 2 Green 344 ; 5 Pet. 90 ; 3 Minn. 406 ; Thomas v. Merchants' Bank, 9 Paige 218.

If the sheriff does not seize, it is because the garnishee gives security, and the goods specified are to be restored if the attachment be dissolved, or the judgment afterwards disproved. The sheriff must go to the person having the effects, and declare in the presence of witnesses that he attaches them. And it is so in some other states : Desha v. Barker, 3 Pike 509 ; Gibson v. Wilson, 5 Id. 422 ; Richmond v. Duncan, 4 Id. 197 ; Hays v. Gillespie, 11 Casey 155.

This declaration binds the goods, and gives the sheriff power to take and secure them. The vice of this service is more evident when applied to common carriers : no case has been found where mere copy service has been approved : see Bingham v. Lamprey, 2 Casey 340 ; Shriver v. Harbaugh, 1 Wright 401.

Such service would impose on a carrier the duty of violating

his contract to carry and deliver, and require him to know who are the real owners of the goods. It would be a mode of compelling a third person to bear the risk for the plaintiff's benefit: Burlingame v. Bell, 16 Mass. 321; Jewett v. Baron, 6 Mass 61; Clark v. Brewer, 6 Gray 320. The writ does not require the garnishee to arrest the defendant's goods, especially those thereafter coming into his possession: Davenport v. Swan, 9 Humph. (Ten.) 186. Childs v. Digby, 12 Harris 23, may be treated as an assignment before garnishment: 34 Me. 202, 10 N. H. 521. If understood otherwise, it is in conflict with Wales v. Alden, 22 Pick. 245. Sheetz v. Hobensack, 8 Harris 412, holding that an after-due instalment is bound, does so because there is no new transaction. Saywood v. Drew, 6 Green 363, is opposed to this. The instances in which mere garnishment is proper may be found in 5 Whart. 280; 2 Jones 164; 10 Casey 152; 2 Grant 319; 1 Appleton 56; 20 Conn. 384. And it is proper for choses in action held in trust; 4 Pick. 57; 10 Id. 54; 12 Id. 22. In such cases the garnishment is proper, because it does not in any sense affect the rights of the garnishee or increase his duty: 5 Green 353. See also 5 N. H. 538; 3 Duer 9; 5 Mass. 157; 25 Vt. 555; 30 Id. 134; 6 Casey 520; 11 Id. 22; 3 Mass. 33, 68; 1 Id. 471; 12 Pick. 105; 2 Cush. 390; 18 Pick. 396; 1 Id. 389, 400; 3 Met. 268; 46 Me. 226, 293; 12 N. H. 205; 31 Me. 177; 23 Vt. 332; 4 Mass. 235-6.

In Fessler v. Ellis, 4 Wright 249, it is said: " By means of the attachment the plaintiff assumed the position and acquired the rights of the debtor, so far as concerned his relation to the garnishee." And in Corson v. McAfee, 8 Wright 291, it is held that the attachment of a debt does not prevent the parties from settling the amount of it by suit in the ordinary way.

The service in this case did not forbid the carriers from going on and performing their contract to deliver the goods in New York.

*Hamilton & Acheson,* for defendant in error.—The Foreign Attachment Law requires to sheriff to seize goods or when " *susceptible of seizure or manual occupation.*"

The usual practice is to serve the garnishees with a copy of the writ and notice that the goods are attached: 2 Tr. & H. Prac. 657; Bingham v. Lamping, 2 Casey 340; Shriver v. Harbaugh, 1 Wright 401.

In Childs & Co. v. Digby, 12 Harris 23, the ruling was, that all that is requisite to maintain the proceedings is that the garnishee be within the jurisdiction of the court.

The Act of April 12th 1855 exempts a transportation company from proceedings in attachment when the goods, &c., are *in transitu, and at the time of the service of the process beyond the limits*

[Pennsylvania Railroad Co. v. Pennock.]

*of the Commonwealth*, without default, &c., of the company, Purd. 492, pl. 5. The inference is that the legislature intended that such goods, if within the Commonwealth, should be bound.

The answers admit that at the service of the writ the garnishees had petroleum in possession shipped by defendants' agents to them at New York; they were therefore consignors and consignees both—this made the evidence of their ownership complete. If *consignees* only, the law presumed that they were the owners: Bingham *v.* Lamping, 2 Casey 340.

This would apply to the oil subsequently sent, of which defendants were consignees only. Besides, the bond of indemnity taken by the garnishees from the defendants, recites that the oil "has been attached by the sheriff."

The garnishees having voluntarily delivered the oil and prevented plaintiff from ascertaining its value, and having protected themselves by a bond of indemnity, must be taken to have waived the right to having the value determined by a jury, who from the amount of the bond would be justified in finding that $10,047.66, the amount of plaintiff's judgment, did not exceed the value of the oil; and the court may, on the answers, make the same inference which a jury would be justified in making.

Besides, as garnishees, being amply protected and having no real interest, the judgment should be regarded as operating directly against the defendants.

The damages were properly assessed by the prothonotary under the Act of May 8th 1855 (Pamph. L. 582, Purd. 494, pl. 14), relating to assessing damages in foreign attachment. Moreover, a garnishee cannot object to the liquidation in the original judgment: O'Connor *v.* O'Connor, 2 Grant 245.

The opinion of the court was delivered, January 15th 1866, by
THOMPSON, J.—Judgment was entered in the court below in this case against the plaintiffs in error, garnishees of Wood & Wright, on their answers to the interrogatories propounded by the plaintiff below, and it is to that judgment this writ of error was taken.

The answer of the company to the first interrogatory, denied the possession of any petroleum belonging to the defendants, Wood & Wright; either on the 15th of April 1864, the day of the service of the writ, or since; excepting, however, that prior to that date transportation had been contracted for with them for twelve hundred and forty-five barrels of crude petroleum, marked "Wood & Wright, New York," which before the suing out of the plaintiff's attachment had been, as contracted, carried by them beyond the limits of Allegheny county, and was at the time of service at Philadelphia, awaiting transportation to New York; and they further answered, that no seizure of the defendants' pro-

perty was ever made by the sheriff on the attachment, and consequently there was no valid service of the writ. The facts of the alleged service, and the whereabouts of the property at the time, were not controverted; but it was claimed and so held by the court that the service was sufficient to bind the garnishees for the goods. The sheriff's return of service is as follows: "Executed April 15th 1864, by delivering to D. A. Stewart, agent of the Penna. R. R. Co., a true and attested copy of the within writ, and making known to him the contents thereof, and summoning the Penna. R. R. Co., as garnishees."

The objection to this service was, that it was not according to law, and that no property of the defendants was found, attached or seized, in the hands of the company, and therefore nothing about which the company could be called on to answer as garnishee. No goods even purport to have been seized, nor any return to show that a seizure was prevented. In fact nothing was done but a service of the writ of summons on the garnishees to answer. To answer what? Not to answer how they were possessed of the goods of the defendant, what their claim to them was, or to disclose all they know about his title. This could not be, for no goods were actually attached, and those intended to be attached were not within the sheriff's bailiwick at the time, and of course not within reach of his writ. The *res* on which the writ was to operate, and which was undoubtedly the principal thing in the proceeding, was not where the writ could touch it. To seize it, was the first step to be taken; how could the second necessary step be taken, namely, the summoning the garnishees without the first having been taken?

The Act of Assembly regulating proceedings on foreign attachment, says a writ "in form aforesaid against the real and personal estate of any person not residing within this Commonwealth," shall issue, &c., and there shall be a clause in every such writ, commanding the officer to summon all persons in whose *hands or possession* said goods, &c., shall be found as garnishees. The goods, according to the act, are to be first attached and then the party in whose possession they are found is to be summoned. The writ commands the sheriff "to attach the *defendant by his goods and chattels*, lands and tenements, in whose hands or possession soever the same may be, so that he (the defendant) be and appear," &c. It is a process to compel appearance by the defendant, as all know; a species of sequestration of his property when his person cannot be reached, until he does appear, and if he never appears is to be applied in satisfaction of the debt for which the writ issued. The party being beyond the reach of process and his property within, is the foundation for the attachment process. But if neither be within the reach of process, it is evident no appearance can be attained. There is nothing on which

[Pennsylvania Railroad Co. *v*. Pennock.]

process can operate, and there is an end of the attachment writ, if one be issued, as there would be to suit commenced by summons when the party is not to be found.

But the directions of the statute as to what the writ is to be served upon, the manner of the service, and the object of issuing it, all seem alike to be disregarded in a return of service like this. The act directs the sheriff to go to the person or persons in whose hands or possession the defendants' property is supposed to be, " and *then* and *there* declare in the presence of one or more credible witnesses of the neighbourhood, that he attaches said goods and effects;" and in a subsequent section it is declared " that the goods and effects of the defendant in the attachment in the hands of the garnishee, *shall after such service, be bound by such writ*, and be in the officer's power and susceptible of seizure, or removal or occupation," and the officer shall proceed and secure the same, to answer and abide the judgment of the court in that case, unless the person having the possession thereof, will give security therefor. Both these provisions constituted a single section in the Act of 1702, 1 Sm. L. 45, from which they were almost literally copied by the revisors. The effect however is not impaired by being in separate sections.

Now, it is undoubted that the property claimed to have been attached in this case, was susceptible of seizure, had it been present. But it was not, and nothing was done in attaching it that the act requires. There was no seizure and declaration in the presence of witnesses, and if this were necessary to a service as the act declares, the property was not bound by the writ. If the property was not bound, it is not easy to see how any person would be bound to answer as garnishee. The first thing was to serve the property, so to speak, the next the person in whose hands it should happen to be found. But here the order was reversed, and rather more. The garnishee was served first, and the property not served at all. All laws must be construed reasonably, so as to meet the exigencies of cases, although not always expressly provided for. I do not doubt, therefore, that there may be cases where a foreign attachment might be well executed, when, by fraud or force, the officer is prevented from getting at the property, so as to reduce it to possession.

But in such cases his return ought to show the very facts of the case, and that he has attached, as nearly in accordance with the requirements of the statute as possible; and should it turn out that the property was in the hands of the garnishee at the time, he would not be permitted to take advantage of his own wrong, by setting up that the attachment was not served according to law. But the rule claimed ignores the directions of the statute, altogether; a thing we cannot sanction. It is a statutory remedy, and its provisions must be followed with reasonable strictness.

This is the doctrine of the Act of 1806. If therefore a seizure be necessary to give full effect to the writ, it must be made, or something equivalent under the circumstances be done. We cannot undertake to say that the directions of the statute mean nothing, wherein the sheriff is required if the property be susceptible of seizure and manual occupation, " to proceed and secure it, to answer and abide the judgment of the court." No doubt the notoriety of seizure required to be made in the presence of, witnesses, was to prevent fraud and secret liens, as well as disputes amongst attaching creditors, where the writ of attachment unlike an execution is not a lien until executed, and can only be so when executed substantially as prescribed. I cannot doubt but the meaning of the expression, " susceptible of seizure and manual occupation," is referable to the nature of the property, and not to its circumstances ; and whenever it cannot be seized because not to be found within the jurisdiction of the court, there the effect of the process must end, unless it be constructively and potentially in possession of some person by reason of a fraudulent removal or concealment of it. The mode and manner of service is provided for, and specifically in regard to property not susceptible of seizure, but even there more is required to be done in the service of the writ, than was done here.

That there must be actual seizure of goods intended to be attached, is ruled in several cases in this state. In Morgan *v.* Watmough, 5 Whart. 125, Sergeant, J., delivering the opinion of the court, said : " The only question which remains open for examination is, whether the sheriff is bound to seize the goods when they are capable of seizure, or can only serve the garnishee with a copy of the writ, as is the practice in the case of the attachment of a debt due by the garnishee to the defendant ? And we are of opinion that the sheriff is bound to *seize the goods as in* other cases." The learned judge who delivered this opinion had paid much attention to the doctrine of attachments, and had furnished the profession with the only text-book they had then or since on the practice under the process.

The same principle seems inferrible from the proceedings had in Maris *v.* Schermerhorn, 3 Whart. 13. In Christmas *v.* Biddle, 1 Barr 223, Coulter, J., says : " The·attachment process is a proceeding *in rem*, and the matter or thing attached must be in the power and jurisdiction of the court." This touches both features of our case—the want of seizure and the actual absence of the property from the jurisdiction of the court, without any pretence of fault on part of the garnishees.

Wolbert *v.* Fackler, 8 Casey 452, was an attachment issued by a justice of the peace, under the Non-Imprisonment Act of 1842, and it was held that actual seizure was necessary to the effectual execution of the writ there. In Harbaugh *v.* Shriver, 1 Wright

399, we held the garnishee not answerable for the goods of the defendant in his possession, but which the sheriff neither seized nor reduced to possession.   Innumerable decisions exist in other states to the same effect, many of which have been referred to by counsel for the plaintiff in error, most of which I have examined, and find the principle fully sustained by the citations.   I shall refer in this opinion but to two or three of them.

In Wollaston v. Goodale, 8 Conn. 332, the opinion of Hosmer, C. J., contains a happy elucidation of the doctrine.   He said: " The word *attached* is derived from the Latin *attingo*, and more directly from the French *attacher*, and signifies to touch, and was adopted as a precise expression of the thing ; *nam qui nomina intelligit, rem etiam intelligit*.   The only object of attachment is to take out of the defendant's possession and transfer into the custody of the law, the goods attached, that they may if necessary, be seized in execution and be disposed of and delivered to the purchaser.   From both these considerations it is apparent, to attach is to take actual possession of property.   Hence the legal doctrine is firmly established, that to constitute an attachment of goods the officer must have actual possession and custody ;" and he cites many authorities in support of this position.

Nothing could be more apposite to our case than these views. Indeed it is impossible to understand how property, not actually levied on by the attachment, can be held clear of other attachments actually levied.   This remark is not intended to cover the case of property, a part of which, in the name of the whole, is seized, while the balance is in process of coming into the garnishee's hands, when doubtless the actual seizure of a part in the name of the whole might be sufficient.   We need not decide this now.

In Minnesota, the attachment laws in respect to service of process on property, are very similar to ours, and I observe it was held by the Supreme Court of that state (3 Min. Rep. 406) that actual seizure is essential to a good execution of an attachment. This is asserted to be the rule, unless the sheriff be prevented by the person in possession from making the seizure ; then a special return of the facts must be made, and this will hold the garnishee.

Thus stands the doctrine on authority.   On the other side the case of Digby v. Childs, 12 Harris 23, seems to be relied on for a contrary doctrine.   The report of the case is not clear, but it would seem that the attachment was served as this one was, on Digby as garnishee, while the debtor's goods were in the hands of the garnishee's agent in Ohio.   The service was held sufficient, as I would understand, to bind the garnishee for the value of the goods.   But it was said in argument that this was not the true state of fact in regard to that attachment.   That it was the proceeds of the goods which were liable to come into the garnishee's

[Pennsylvania Railroad Co. *v.* Pennock.]

hands as agent of the debtor, which were attached. That would present a different case, but the report does not bear out this view of the case. Be that as it may, however, all that can be said of the decision, if we are to understand it as an attachment of property in Ohio by service on the garnishee in Pennsylvania, is that the Act of Assembly gives no authority to justify the proceeding in our view of it. The requirement of the act, as already remarked, is, that the property is to be first seized and then the garnishee is to be served. The term garnishee is derived from " garnish, to warn." But if no goods be seized, or its equivalent, the garnishee is liable to be put on the stand as on a bill of discovery, and the whole process is changed and the attachment law utterly changed. This case stands opposed to the explicit directions of the attachment law, to the authorities cited, and to reason. It cannot, however, repeat itself, for on the 12th of April 1855 an act was passed declaring that when goods, wares and merchandise are *in transitu*, at the time of service of process, beyond the limit of the Commonwealth, without default, collusion or fraud on part of the company or transporter, they shall not be liable to proceedings in attachment issued in this state. This act no doubt was the result of the case of Digby *v.* Childs, and clearly sets aside the rule therein announced. But now it is contended that this act impliedly sanctions the service here; that if the property be within the state, in the custody of the agents of the transporter, a service on their principal in any part of the state, holds him bound for the goods in any other portion, no matter whether within or without the jurisdiction of the court issuing the writ. That this was intended by the legislature is conjectural— it is not so said. The argument has a show of plausibility in it, and there may be cases in which a similarity of expression might call for such a construction. But if we construe this act in the light of the object intended to be obtained by it, we will be satisfied, I think, that no such construction is permissible. It is a restraining and not an enlarging statute. That was its obvious purpose. But the defendant in error claims it to be a declaratory law, and by force of construction that it enlarges and alters the Attachment Law. There is not a word to justify this assumption. Let the act have its full operation, and it simply does not touch our question, but leaves the attachment laws to be administered by the courts, excepting only so far as it changes the construction by the court in the case referred to.

To adopt the rule contended for by the defendant in error, it is obvious that goods situated as these, were not bound by the service of the writ, and in consequence of which they were liable to actual seizure on execution-attachment, or to sale by the debtor in any county after they left Pittsburgh. At the moment of the service of the summons on the garnishees, the goods might have

[Pennsylvania Railroad Co. *v.* Pennock.]

been passing under a process of actual seizure in Philadelphia, and in such a state of affairs it would be simply absurd, as well as unjust, to compel the defendant to obey the warning given him, and answer in court about goods that the attaching-creditor had no lien upon or possession of whatever, and not in the custody of the law, to answer the debt in default of the appearance of the debtor, by reason that nothing had been done to entitle him to a claim on them. If this were the rule it would put transporters in an awkward dilemma often. We think it is not the rule.

The answer of the garnishees admits that other goods besides these twelve hundred and forty-five barrels of oil, came into their hands as carriers after the service of the writ referred to, but denies any service upon it. According to our view no service was had on it. In attachments of debts and the like, or money passing through the hands of the garnishee, no doubt accumulations after notice to the garnishee would be bound. There actual seizure is not required, for it is not, in contemplation of law, possible. But I know of no such rule in regard to distinct shipments in separate parcels of goods. No doubt the seizure of a part of a certain thing would bind the whole when it would come to hand, but that is upon a different principle. The judgments here are predicated of the twelve hundred and forty-five barrels, and not of any property arriving and transported after the service of the writ, but this last view is not material in this case, and is given to avoid any misunderstanding as to our view of the plaintiff's claim on it.

We are of opinion that the court below erred in entering judgment for the plaintiff on the case before them, and it is reversed.

WOODWARD, C. J., and AGNEW, J., dissented.