Decree affirmed and appeal dismissed at the costs of the appellant.

## Appeal of E. S. Jaffray & Co.

101        583
e 24 SC 1 67

1. To a writ of foreign attachment issued against goods in a store the sheriff made return that he at a certain time went to the store and there declared in the presence of A. & B., two credible witnesses of the neighborhood that he attached the stock of goods therein as the property of the defendant and made known the contents of the writ to C. & D., who had charge and possession of the store and stock of goods, and served each of them as garnishees by reading the writ to them.

*Held*, 1. In a contest between the plaintiff in the attachment and subsequent execution creditors that the return was sufficient and that the attaching creditor, who subsequently obtained judgment, was entitled to the fund produced by the sale.

2. That the sheriff need not insert in his return that clause of § 50 of the Act of June 13th 1836, which provides that if the goods attached are "susceptible of seizure or manual occupation, the officer shall proceed to secure the same to answer and abide the judgment of the court in the case, unless the person having the possession thereof will give security therefor." These words are but a declaration of the sheriff's responsibility

in the reference to the custody of the goods attached. They are not directory but descriptive.

2. The writ of foreign attachment being served as above stated, the sheriff added to his return to subsequent writs of fi. fa. after the description of the levies the words "being the same property attached by me as the property of A., by virtue of a writ of foreign attachment issued at the suit of B., the time and manner of service being stated in full by my return to said writ": *Held*, that this recital bound both the sheriff and his privies, the execution creditors, and subordinated their writs to the previous attachment.

November 29th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Crawford county*: Of January Term 1883, No. 99.

This was an appeal of E. S. Jaffray & Co., from a decree of the Common Pleas of Crawford county, in the matter of the distribution of the proceeds of a sheriff's sale of the personal property of De Forest Weld at the suit of George W. Trawin.

The fund for distribution was paid into court by the sheriff, and W. R. Bole, Esq., was appointed Auditor to report distribution, who found the facts as follows : " De Forest Weld was a citizen of Jamestown in New York, and the lessee of a store and the owner of goods therein, in Meadville, Crawford county, Pennsylvania.   On March 1st 1881, at 2 : 10 P. M., Weld executed and delivered to one Lucius B. Warner, an assignment of all his estate for the benefit of his creditors.   This assignment was under the laws of New York, which permits an assignor to prefer one creditor to another and contained such preferences.   Weld was insolvent at the time.   On the same day, March 1st 1881, E. S. Jaffray & Co., a firm doing business in the city of New York issued a foreign attachment in Crawford county against De Forest Weld, which attachment was served at 3:53 P. M., of that day."   The sheriff's return to this writ was in these terms : " By virtue of the annexed writ, I went to the store of De Forest Weld in the city of Meadville, Pa., March 1st 1881, at 3:50 P. M.; and then and there declared in the presence of  .   .   two creditable persons of the neighborhood, that I attached the stock of goods in said store consisting of calicoes, silks, satins,   .   .   .   &c., &c., as the property of the defendant, De Forest Weld, and I then and there made known the contents of said writ to A. W. Byers and G. D. Trawin, who had charge and possession of said store and stock of goods and served it on them as garnishees by reading this writ to them."   The Auditor further found in relation to the service of the writ that said attachment was served at 3:50 P. M., of March 1st 1881, in the city of Meadville aforesaid, by John N. Apple, a duly qualified deputy sheriff, who went to

said store at said time, and in presence of F. W. Ellsworth and L. H. Lenheim, two credible persons of the neighborhood, declared that he attached the stock of goods in said store ; that said store was not taken possession of at that time by the deputy sheriff, and the business was carried on as usual in the name of De Forest Weld, until about the hour of 7:30 P. M., of said day, when it was taken possession of by S. C. McDowell, one of the sheriff's deputies ; that the said John Apple, at the time of serving said attachment, stated that he left the said goods in the custody of A. W. Byers, a clerk in said store, and G. D. Trawin, agent of De Forest Weld ; that said George D. Trawin was not present in said store at the time of said statement and the execution of said attachment, and the said A. W. Byers did not hear the said statement, and that neither of the parties acted thereon or took control of said store on behalf of the sheriff ; that the attaching creditors had no notice of the assignment of said De Forest Weld at the time of issuing said writs.

Upon the same day March 1st 1881, some seventeen writs of fi. fa. were issued by Trawin and other judgment creditors of Weld and delivered to the sheriff at various times from 4:17 P. M. to 6:25 P. M. Two other writs of fi. fa. were also issued on March 5th and March 10th respectively. To each of these writs the sheriff made return after reciting the levies and sales :

" I have these moneys in my hands for distribution, or subject to the order of the court. The personal property sold on above execution being the same property attached by me as the property of De Forest Weld by virtue of a writ of foreign attachment issued at the suit of E. S. Jaffray & Co., the time and manner of service being stated in full by my return to said writ at No. 35, May Term, 1881." E. S. Jaffray & Co., afterwards recovered a judgment in said attachment for $59,805.66 with costs, an amount greater than that realized by the sale.

Upon the questions of law involved, the Auditor reported as follows : " The cases of Morgan v. Watmough, 5 Wh. 125, and P. R. R. Co. v. Pennock, 1 P. F. Smith 244, are relied on to sustain the position that actual seizure is necessary to create a lien. The former decides that the sheriff is not liable in trover for seizing the goods of a firm on a writ of foreign attachment against one member of the firm. In other words, it rules that the sheriff is justified in doing what the statute expressly directs. It decides that the sheriff did his duty in taking manual possession of the goods. It does not decide that a service as directed by the statute, by going to the person in possession of the goods, and declaring, in the presence of one or more credible persons of the neighborhood, that he attached and summoning the person in possession of the goods as garnishee does not create a lien without such manual seizure.

"The case of the Pennsylvania R. R. Co. *v.* Pennock, 1 P. F. S. 244, decides that the service of the writ on the garnishee, or person in possession, does not create a lien without service on the goods. In that case the goods were not within the county, and the court said the foundation of the writ of foreign attachment is that the defendant is beyond the reach of its process, and his property within it, and that under the Act the first thing to do is to serve the property, the next the person in whose hands it is found. Clearly those cases do not sustain the position that no lien is created before actual seizure. The express words of the statute are that the goods in the hands of the garnishee shall, after such service, be bound by such writ and be in the officer's power. Language could not be plainer. Then follows the direction that the officer shall proceed to secure the same to answer and abide the judgment of the court, unless the garnishee give security. This is clearly directory and makes the sheriff liable to the plaintiff in the writ for the value of the goods, if they are not secured. But the goods are bound by the service of the writ before such seizure, and while in the hands of the garnishee. In the present case the sheriff took actual possession of the goods about 7:30 P. M., of the same day on which he served the writ of foreign attachment. A reasonable construction of this statute would give the person in possession of goods a reasonable time, after the service of the writ of attachment thereon, to procure bail that he might obtain the goods. The law in such cases does not regard the fraction of a day, and if the writ of foreign attachment was duly served at any time during that day, and such service followed within a reasonable time thereafter in the space of a few hours, or during that day, by taking possession of the goods, such service and seizure were a valid execution of the writ. The Act does not, it seems, require the officer to take immediate possession of the goods, but appears to require him to retain control of them, and on failure of the persons in possession to give bail, to proceed to take actual manual occupation thereof. In this case the service of the process followed the directions of the statute. It does not appear by the return, however, that the sheriff took actual possession of the goods. The fact is, that within a few hours after this service, the goods came into the absolute possession of the sheriff. . . . .

"As the sheriff brings this money into court, his entire return in relation to the property out of which the fund is raised is conclusive upon all parties claiming it or any part of it: Paxson's Appeal, 13 Wright 198; Mentz *v.* Hamman, 5 Wharton 150; Flick *v.* Troxsell, 7 Watts & Sergeant 67; Diller *v.* Roberts, 13 S. & R. 60; Blythe et al. *v.* Richards, 10 S. & R. 266. . . .

"As between conflicting execution creditors the sheriff's return is conclusive, it cannot be gainsaid; the injured party having adequate remedy against him. To each one of the executions before the auditor the sheriff returns: 'The personal property sold on the above entitled fi. fas. being the same property attached by me as the property of De Forest Weld by virtue of a writ of foreign attachment issued at the suit of E. S. Jaffray & Co., the time and manner of said attachment being stated in full by my return to said writ at No. 35, May Term, 1881.' This return is conclusive upon all parties contending in this case. The legal effect of the reference to the return made in No. 35, May Term, is to incorporate that return into the return of each one of the fi. fas.: 'words to which reference is made in an instrument have the same effect and operation as if they were inserted in the clause referring to them.' Broom's Maxims 673."

The Auditor therefore awarded the balance for distribution less costs and expenses to Jaffray & Co., on account of their judgment.

Exceptions filed to the report of the auditor, by the several execution creditors, were sustained by the court, CHURCH, P. J., filing the following opinion:

"The 43d section of the Act of June 13th 1836, gives the form of the writ of foreign attachment, and it is provided thereby, that the sheriff is commanded that he attach the defendant by all and singular his goods and chattels, etc., in whose hands or possession soever the same may be. The manner of executing the writ in the case of personal property is fixed in the 48th section of the Act. "The officer to whom such writ shall be directed, shall go to the person in whose hands or possession the defendants goods or effects are supposed to be, and then and there declare in the presence of one or more credible persons in the neighborhood that he attaches the said goods and effects, &c., &c. And it is provided in the 50th section that "the goods and effects of the defendant when attached in the hands of the garnishee, shall after such service be bound by such writ, and be in the officer's power, and if susceptible of seizure or manual occupation, the officer shall proceed to secure the same, to answer and abide the judgment of the court in the case, unless the person having the possession thereof will give security therefor."

"In Nichols v. Patten, 18 Maine 231, it is held that a sheriff's return must state all his acts and doings under the writ, so that the court may judge of their sufficiency, and whether they constitute a valid attachment upon which the court is authorized to proceed to judgment. The use of the word "attach" is not sufficient. It is a conclusion of the sheriff that he attached, and

it is not necessarily to be heeded. It is his opinion merely, and the sufficiency thereof is for the court to determine; such is also the law in this state: Hayes *v.* Gillespie, 35 P. St. 156; Lambert *v.* Challis, Ibid. note.

"It is found by the Auditor, and is admitted on all hands, that the stock of goods in the store was susceptible of seizure and manual occupation. Under these facts and circumstances, was not the sheriff bound to seize the goods and take them into his possession and control and custody, and being so bound, did he not neglect to do it as he was commanded by the writ in his hands and the provisions of the statute?

"In Morgan *v.* Watmough, 5 Wharton 127, Judge SERGEANT, who was an authority on the subject of the Attachment Laws of the Commonwealth, in delivering the opinion of the court says: "The sheriff is bound to seize the goods in this as in other cases, and that in taking them into his actual possession until security was given, he was but complying with the positive directions of the Act.

"In Penna. R. R. *v.* Pennock, 51 Pa. St. 244, Mr. Justice THOMPSON, in delivering the opinion of the court, says substantially the same thing. So does Mr. Chief Justice LOWRIE, in Shriver *v.* Harbaugh, 37 Pa. St. 401. . . . .

"The agent and clerk did not look upon themselves as sheriff's bailiffs, and they were not such in point of fact, as the Auditor has found. They neither knew nor heard that any such responsibility had been thrust upon them. They kept on selling goods for the defendant, their employer, and accounted to him and to no one else for the proceeds thereof.

"We are not informed as to the amount of goods sold. It can make no difference. They all might have been sold and distributed, physically speaking. If they had been all so sold, where would have been the security to abide the final judgment of the court? The truth is, the sheriff never had control or possession of these goods. . . . .

"It is claimed that the return to the fi. fas. cannot be gainsaid or impeached, and that thereby the sheriff has expressly made these writs subject and subservient to the writ of foreign attachment, but the sheriff has made no such return. He has not stated that he had levied upon and sold this property, and made the money thereon subject to any writ of foreign attachment, yet even if it was intended, he has failed to accomplish his purpose. . . . .

"The sheriff expressly refers to that return for a description of the time and manner of the service of the writ of attachment, and thus incorporates it in his return to the fi. fas. Therefore, if the service and return of the writ of foreign attachment is faulty, they can acquire no vitality or validity through any

re-affirmation in some subsequent return, that it did not possess before. Paxson's Appeal, 49 Pa. St. 195, wherein it was held that subsequent executions returned as "levied subject to prior liens," gave vitality to those prior liens, is not in point. In the case before us, the sheriff has not returned that he levied upon and sold this property subject to the foreign attachment. He has simply stated that the property sold is the same property he undertook to attach. It is a mere matter of description of the property; mere overplusage in the return, and incapable of giving effect to anything. It is a very different statement from the words "subject to." These are words of art and, in law, have a technical meaning. "Subject to" signifies subordinate to, dependent on or subservient to, and thus it is easy to be seen that a levy subordinate to, or dependent on a prior levy, must yield to the dominate power of such formed writ."

The court accordingly sustained the exceptions filed and entered a decree awarding the balance to the several writs of fieri facias in the order in which they came into the sheriff's hands. Whereupon E. S. Jaffray & Co. took this appeal, assigning for error the decree of the court sustaining the exceptions filed to the report of the Auditor and awarding the fund in court as above stated.

*John P. Vincent* and *Thos. M. Marshall* (with them *R. Brown* and *J. B. Brawley*), for the appellants.

*D. T. Watson* (with him *F. B. Guthrie*), for the appellees.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1883.

Able and ingenious as is the opinion of the learned judge of the court below, it has failed to convince us of the rectitude of the legal position which he therein assumes.

The question is a very simple one, and one upon which there is no real difference of authority; indeed, there can be none, so far as the state of Pennsylvania is concerned, for the whole matter is fixed and controlled by the provisions of the Act of Assembly. The question is, were the goods in controversy regularly seized by the sheriff of Crawford county on the writ of foreign attachment of Jaffray & Co.? If they were so seized, the present contention must be determined in favor of the appellants. In order then to settle this matter, we must turn to the sheriff's return as indorsed on the writ, but when we do, so we find in this a strict compliance with the terms of the Act of Assembly. If it be, as stated by this return, that the sheriff, by himself or deputy, went to the store of De Forest Weld, in

the city of Meadville, on the 1st of March 1881, at 3.53 P. M., and there declared, in the presence of F. W. Ellsworth and L. H. Lenheim, two credible persons of the neighborhood, that he attached the stock of goods in the store, consisting of silks, &c., and that he then and there made known the contents of said writ to Byers and Trawin, who were found in the possession of said goods, then, from that moment, this property, in the language of the Act, was bound by the writ and in the officer's power, and from that moment Byers and Trawin became the sheriff's bailees, and to him they were responsible for the care of the goods, as he in turn was answerable, under the 50th section of the Act of 1836, for the forthcoming of the property to answer and abide the judgment of the court. About these facts, however, thus set forth, there is no dispute. It is a fact that the deputy sheriff did, at the time stated, go into the store, and there, with the goods in sight and fully within his power, execute the writ as set forth in his return. This was a seizure to all intents and purposes. As was said by SERGEANT, Justice, in Paxton *v.* Steckel, 2 Barr 93, the levying the attachment may be done without either handling the goods, or taking them into possession, and the property fully bound by it, and be in the officer's power, and the owner's possession thereby divested. Now the error in the court below seems to have arisen from a misunderstanding of the word "seized" as used in the cases by it cited. As in the cases of the Pennsylvania Railroad Co. *v.* Pennock, 1 P. F. S. 244, and Morgan *v.* Watmough, 5 Wh. 127. But in these, as in all the other cases thus cited, where seizure and possession are insisted upon, it will be seen by a careful reading of them, that no exception has ever been taken to a seizure such as the one now under consideration; on the other hand that is exactly the one that is said to be required, and the one which, by force of the act, draws the possession to it. In the first of the two cases last mentioned, Mr. Justice THOMPSON says: "Now, it is undoubted that the property claimed to be attached in this case, was susceptible of seizure, had it been present. But it was not, and nothing was done in attaching it that the Act requires. There was no seizure and declaration in the presence of witnesses, and if this were necessary to a service as the Act declares, the property was not bound by the writ. If the property was not bound it is not easy to see how any person would be bound to answer as garnishee. The first thing was to serve the property, so to speak, the next the person in whose hands it should happen to be found. But here the order was reversed, and rather more. The garnishee was served first and the property not served at all." But certainly this language cannot be applied to the service of the writ under discussion, where every particular of the Act relating to

the levy was complied with, and in consequence of which the sheriff was vested with the possession of the goods, and the defendant's possession as completely divested as though the officer had at once carted them away from the premises on which they were found. So in the second of those cases, Mr. Justice SERGEANT speaks in this manner: "the sheriff is bound to seize the goods as in other cases, and in taking them into his actual possession until security was given, he was complying with the positive directions of the Act." Here what the learned justice means by the word "seize" is made obvious by his assertion that the "seizure must be made as in other cases." That is, on an execution. But we all know what this means when applied to ordinary execution process. The sheriff must make his levy in view of the goods, but he need not carry them away. He may even leave them in the possession of the defendant, and thus constitute him his bailee. Yet in Trovillo v. Tilford, 6 Watts 468, it is said, "the officer, in making the levy on the goods of the defendant, should make an actual seizure, but seizing part of the goods in the name of the whole, on the premises, is a good seizure of the whole."

But the counsel for the appellees seriously contend that the latter clause of the 50th section of the Act should be made part of the return. But we answer, the statute does not direct an act so useless and illogical. As well might the first clause be made part of the return, though it is merely declarative of the effect of the levy. In like manner is the latter clause but declarative of the sheriff's responsibility with reference to the goods which the law, by virtue of the levy, has put into his possession or power.

The error is found in the attempt to make that language directory which is purely descriptive and definitive. Where the property is of a particular character, that is, where it is of a kind which is susceptible of manual seizure, the sheriff must, at his own peril, so secure it that it may be forthcoming on the final disposition of the case. But how he is to secure it is not said, except that, inter alia, he may, for that purpose, take the bond of the garnishee. All this, however, is no more than is the responsibility cast upon the sheriff as to goods seized upon a fi. fa.

As we have before intimated, after the seizure of the goods in controversy, the garnishees became the bailees of the sheriff: Shriver v. Harbaugh, 1 Wr. 399; and thus was his possession continued until he chose otherwise to secure the property, and which he did so otherwise secure, by taking it into his own possession, on the very day of the seizure, and within four or five hours after it was made. There is, therefore, nothing left but the conclusion that all things that were done in the premises

were done regularly and bound the goods in controversy, and so the appellants became entitled to their proceeds.

Finally, if Paxson's Appeal, 13 Wr. 195, is law, we cannot see how the appellees can avoid the return on their own writs of fi. fa. The indorsement with the levies is "being the same property attached by me as the property of De Forest Weld." This, of course, binds both the sheriff and his privies, the plaintiffs in the writs, and subordinates those writs to the previous attachment.

It follows, that under any aspect of this case the decree of the court below, sustaining the exceptions to the Auditor's report, was erroneous and must be reversed.

> The decree is now reversed at the costs of the appellees, and it is ordered that the auditor's report be restored and affirmed, and that distribution be made in accordance with it.