**In the Matter of CONSOLIDATED CONTAINER CARRIERS, INC., Bankrupt.**
**Maurice Stern, Trustee, Appellant.**
**No. 16042.**

United States Court of Appeals
Third Circuit.

Argued March 22, 1967.

Decided Sept. 28, 1967.

Rehearing Denied Oct. 26, 1967.

M. E. Maurer, Wexler, Mulder & Weisman, Philadelphia, Pa., for appellant.

George J. O'Neill, Dechert, Price & Rhoads, Philadelphia, Pa. (Robert M. Landis, Philadelphia, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and KALODNER and SMITH, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

This is an appeal from an order of the District Court for the Eastern District of Pennsylvania, sitting as a bankruptcy court. By its order, the District Court reversed the referee who had held that the bankruptcy court had summary jurisdiction over this controversy, and dismissed the trustee's petition to enjoin prosecution of a state court assumpsit action against the bankrupt, Consolidated Container Carriers, Inc. In re Consolidated Container Carriers, Inc., 254 F. Supp. 606 (E.D.Pa. 1966).

Five months before bankruptcy, Acme Fast Freight, Inc., a creditor of the bankrupt, had commenced the assumpsit action by attaching a bank deposit of the bankrupt through a writ of foreign attachment issued out of the Court of Common Pleas of Philadelphia County. Because the attachment occurred more than four months prior to the institution of bankruptcy, the District Judge held that the lien created by the attachment re-

mained immune to the jurisdiction of the bankruptcy court. He also stated:

> "Since the bank is in the position of a debtor to the bankrupt, the money it is obligated to pay to the bankrupt is not subject to the summary jurisdiction of the bankruptcy court unless the bank consents to such jurisdiction. *Here, Continental Bank and Trust Co. has contested jurisdiction.*" (Emphasis added.) In re Consolidated Container Carrier, Inc., 254 F.Supp. 606 at 608–609.

The difficulty we have with the District Judge's statement is that he does not indicate the nature of the contest by the bank; is or is not the bank claiming special rights in the fund on deposit with it? The bank is certainly entitled to be heard in support of any contested claim, but there is no pleading or other paper in the record to indicate the particulars. To further becloud the issue, the appellant trustee in his brief denies that there has been any contest on the part of the bank, and contends that the bank is merely a stakeholder. If this is so, summary jurisdiction could not be denied by the bank. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770 (1924); In re Matter of Quan Weing, 104 F.2d 112 (C.A.2, 1939); 2 Collier Bankruptcy ¶ 23.05.

With this uncertainty surrounding the bank's status we would be inclined to return the record to the District Court for a factual determination of the bank's position in the case. But there is a second, more encompassing question presented by this appeal. That question is whether service of the writ of foreign attachment, more than four months prior to the filing of the bankruptcy petition, deprived the bankruptcy court of summary jurisdiction over the attached asset? Our affirmative answer to this interrogatory renders it unnecessary for us to remand the case to the District Court.

Existence of the bankruptcy court's summary jurisdiction in this case depends upon whether the bankrupt had constructive possession of the fund at the time of bankruptcy. His constructive possession, in turn, depends upon whether the foreign attachment had the effect of transferring his possessory interest in the bank deposit to the custody of the state court pending the outcome of Acme's suit. Our study of Pennsylvania statutory and decisional law indicates that it did.

The Act of June 13, 1836, P.L. 568, § 50; 12 Purdon's Pa.Stat.Annot. § 2941 (1951), states that a foreign attachment of personal property "places it in the officer's power". In 1954 this statute, insofar as it applied to practice and procedure in foreign attachment, was suspended absolutely, as provided in Rule 1461(5), by Rules 1251–1279 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix. Since the Rules only suspended that part of the Act governing practice and procedure, they necessarily retained that portion controlling the substantive effect of the writ. See Alpers v. New Jersey Bell Tel. Co., 403 Pa. 626, 170 A.2d 360 (1961); 10 Standard Pa. Practice, Ch. 42, § 9 (Rev.ed. 1963).

In Pennsylvania, when the writ of foreign attachment is served on a garnishee it creates a security for the debt, places the attached property in the custody of the state court, and gives the attaching officer a special property interest in it. Pennsylvania R.R. v. Pennock, 51 Pa. 244 (1866); Fitzgerald v. Caldwell, 1 Yeates 274 (1793); Clement v. Courtright, 9 Pa.Super. 45 (1898); 10 Standard Pa. Practice, Ch. 42, § 301 at 375 (Rev.ed. 1963).

In Pennsylvania R.R. v. Pennock, supra, the Supreme Court of Pennsylvania noted that one of the principle functions of a foreign attachment is to take the attached goods from the possession or control of the defendant and to place them in the custody of the law so that they may, if necessary, be seized on execution. And in Munis v. Oliver, 24 Pa. Super. 64, 67 (1903), the Superior Court of Pennsylvania observed:

> "In Jaffray and Co.'s Appeal, 101 Pa. 583, it was held that it was not necessary for the sheriff to take the goods into his custody to execute his

[foreign] attachment so as to bind the goods, that the levying and attachment may be done without either handling the goods or taking them into possession, and the property fully bound by it and be in the officer's power and the owner's possession thereby divested."

See Patton, Foreign Attachment in Pennsylvania, 47 U.Pa.L.Rev. NS 137.

■ The Act of 1836 and those cases concerning the effect of a foreign attachment make it perfectly clear that the writ acts to dispossess the defendant by placing the property in *custodia legis*. If such dispossession should occur more than four months prior to bankruptcy, summary jurisdiction in the bankruptcy court would be precluded. Taubel-Scott-Kitzmiller Co. v. Fox, supra; Dannel v. Wilson-Weesner-Wilkinson Co., 109 F.2d 364 (C.A.6, 1940); Irby v. Corey, 95 F.2d 963 (C.A.5, 1938).

The trustee, however, claims that this case is controlled by In re Boylan, 65 F. Supp. 105, aff'd per curiam, 157 F.2d 518 (C.A.3, 1946). We do not agree. We think the District Judge was correct in concluding that this case is distinguishable from *Boylan*. In the latter case, a creditor of Louisa Boylan obtained two judgments against her in 1926 in the Common Pleas Court of Philadelphia County. In 1930, the creditor filed writs of attachment execution against an individual who was adjudged to owe the bankrupt over $7,000. The creditor took no further steps in the garnishment proceeding until 1945 when Miss Boylan filed a voluntary petition in bankruptcy. The question before the court in *Boylan* was whether issuance of a writ of attachment execution deprived the bankruptcy court of summary jurisdiction. It was held that service of the writ, without more, did not transfer ownership of the debt to the attaching creditor, nor did it transfer possession of the judgment to the Pennsylvania courts. Summary jurisdiction, therefore, was found to lie in the bankruptcy court.

It should be noted that the creditor in *Boylan* voluntarily submitted to the jurisdiction of the bankruptcy court by filing his proof of claim. But in the instant case, the creditor, Acme, (and possibly the bank) has steadfastly refused to consent to the bankruptcy court's summary jurisdiction. Another important point about the *Boylan* decision is the procedure followed by Judge Bard in his analysis of the effect of a writ of attachment execution—he surveyed and studied the law of Pennsylvania. Without commenting on the correctness of the result he reached, we feel that the same procedure should be followed in analyzing the effect of a writ of foreign attachment; for state law—not statements in *Boylan* concerning attachment executions—govern the effect of this writ.

We deem it unwise to extend the holding in *Boylan* to cover factual situations involving foreign attachments, particularly since *Boylan* did not mention, let alone interpret, the Act of 1836, nor did it discuss those Pennsylvania cases touching on the legal incidents of a writ of foreign attachment. Indeed, the argument could be advanced that *Boylan* supports the view that the bankruptcy court did not have summary jurisdiction in this case. In his opinion, Judge Bard said:

> "If the property is in the actual or constructive possession of an adverse claimant *or in the possession of the state court*, the bankruptcy court can proceed no further in the summary proceeding and the trustee can either intervene in the pending action in the state court or may bring a plenary suit in a court of appropriate jurisdiction." (Emphasis added.) In re Boylan, supra at 109.

■ We believe that the above quoted language correctly states the appropriate rule with respect to the bankruptcy court's summary jurisdiction in this case. There is no basis for a summary proceeding here since Acme's foreign attachment divested the bankrupt of his possessory interest in the fund and transferred constructive possession of it to the state court.

Accordingly the judgment of the District Court will be affirmed.