# Reynolds *v.* Nesbitt.

*Foreign attachment—Death of defendant—Dissolution of attachment.*

The death of the defendant in a writ of foreign attachment before final judgment against him is obtained works a dissolution of the attachment.

Argued April 11, 1900. Appeal, No. 44, Jan. T., 1900, by plaintiff, from order of C. P. Luzerne Co., May T., 1899, No. 862, discharging rule for judgment against garnishee, in case of Charles H. Reynolds, Executor, etc., of A. H. Reynolds, deceased, v. Abram Nesbitt, Assignee, etc., Garnishee of Lloyd W. Williams, now deceased, A. Brockenbrough, Ancillary Admr. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule for judgment against garnishee.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was order discharging rule.

*Edmund G. Butler*, for appellant.—This cause was begun, proceeded and ended under the foreign attachment act of June 13, 1836, Purdon's Digest, 929, et seq. By this act the proceedings, effect and object of the writ and the nature of the proceedings were changed considerably if not entirely from those under the prior acts. Purdon's Digest, 932, pl. 18, provides that the property attached shall be bound to answer and abide the judgment of the court, unless the person in possession shall give security therefor. Purdon's Digest, 935, pl. 35, et seq., provides that the defendant may dissolve the attachment by giving recognizance in double the amount with sufficient surety for the payment of the debt; the defendant may appear and defend without dissolving the attachment, so that the lien of the attachment is without limitation, if not dissolved by recognizance. See Neely v. Grantham, 58 Pa. 440, and Price on Liens, p. 307.

Writ of foreign attachment served the same day, but before writ of fieri facias has the precedent lien: Jaffray's Appeal, 101 Pa. 583; Warner's App., 13 W. N. C. 505. Death of defendant in a fieri facias does not abate the writ or discharge the lien: Fitch v. Ross, 4 S. & R. 563; Act of February 24, 1834, P. L. 77, secs. 26, 27, 28; Purdon's Digest, page 594, pl. 124, et seq.

All actions, petitions and legal proceedings survive death of parties, except those enumerated in the act (Ulshafer v. Stewart, 71 Pa. 170; McCollough v. Wilson, 21 Pa. 436), so that whether the case at bar be a proceeding in rem or in personam the proceedings were not abated by defendant's death. Foreign attachment is certainly a legal proceeding.

*Henry W. Palmer*, with him *George W. Shonk*, for appellee. —The death of Williams in 1892, dissolved the attachment issued in 1890: Willing v. Bleeker, 2 S. & R. 224; Farmers' and Mechanics' Bank v. Little, 8 W. & S. 207; Hays v. Lycoming Fire Ins. Co., 99 Pa. 621; 1 Trickett on Liens, sec. 426; Bushel v. Commonwealth Ins. Co., 15 S. & R. 182.

OPINION BY MR. CHIEF JUSTICE GREEN, July 11, 1900:
In this case a writ of foreign attachment was sued out by the plaintiff's testator, on July 9, 1890, against Lloyd W. Williams, a resident of Baltimore, Maryland, and Abram Nesbitt,

assignee of the Plymouth Savings Bank, as garnishee, in the common pleas of Luzerne county. The sheriff's return showed a service of the writ on the assignee on July 18, 1890, and nihil as to the defendant Williams. Reynolds, the plaintiff, died in August, 1890, and the defendant Williams died in November, 1897. The action was removed to the circuit court of the United States in January, 1891, but was remanded to the common pleas of Luzerne county on May 24, 1898, and thereafter, proper substitutions of legal representatives of both parties having been made, the case was proceeded with in the common pleas of Luzerne county until a final judgment in favor of the plaintiff and against the defendant for $29,693.68 was entered on March 23, 1899. On May 5, 1899, a writ of sci. fa. was issued against the garnishee and interrogatories were filed to which the garnishee filed answers on May 29, 1899. The garnishee admitted that he had filed his account as assignee of the bank, in which there was distributed to the estate of Lloyd W. Williams, deceased, $1,529.08, money in his hands as assignee, and that he had the receipt of the attorney for the estate of Williams for the whole amount. He further answered that as the defendant Williams had died before the judgment was obtained all right of the plaintiff under the foreign attachment was absolutely defeated. The material question was thus raised, whether the death of the defendant in the action before judgment was obtained, dissolved the attachment. The court below held that it did, and discharged the rule for judgment, and thereupon the present appeal was taken by the plaintiff.

An examination of the authorities shows that this court has in repeated instances decided that the death of the defendant in a writ of foreign attachment, before final judgment against him was obtained, worked a dissolution of the attachment, and it was upon these decisions that the ruling of the court below was made.

Probably the earliest case in which this doctrine was declared was Willing v. Bleeker, 2 S. & R. 224. The writ was issued on February 6, 1808, and duly served upon the garnishees. On the same day the defendant petitioned for the benefit of the insolvent laws, and on August 19, following, he executed a deed of general assignment for the benefit of all his creditors. A question arose whether certain duties owing to the United

States were entitled to a preference.    At September term, 1808, judgment was obtained against the defendant for the debt in suit, and a sci. fa. against the garnishees was issued to June term, 1809.    It was claimed by the United States that under an act of congress of March 2, 1799, which provided that in all cases of insolvency, certain debts due to the United States should have preference, the claim for duties should be preferred to the plaintiff's claim under the attachment.    The court said, TILGHMAN, C. J.: " The assignment of August 19, 1808, falls directly within the law.    This is not disputed, but it is contended on the part of the plaintiff, that the United States was entitled to no preference until the date of the assignment, prior to which he had obtained a lien on the property in the hands of the garnishees.    It is to be considered then, what kind of lien had been obtained by the attachment.    That is the point on which the cause turns.    An attachment transfers no property to the plaintiff.    Its object is to compel the appearance of the defendant.    That being obtained by entry of special bail, the attachment is dissolved.    So likewise it would be dissolved by the death of the defendant before judgment though no bail were entered.    And even when it is not dissolved, the goods are to remain in the hands of the garnishee on his giving security to answer their value, and after such security the property may be transferred to a stranger.    The lien of the plaintiff, therefore, is of a special nature; it may eventually become absolute, but is liable to be defeated by various circumstances, without payment of his debt."    The chief value of the foregoing citation is the ruling in relation to the nature and effect of an attachment, and its manifest application to the case of death of the defendant before judgment.    If the attachment transfers no property, if it confers only a special kind of lien liable to be defeated in a number of ways, and particularly by the death of the defendant before judgment, then there is no reason to hold that, merely of its own force, it necessarily fastens itself upon the property of the defendant as soon as executed and cannot be divested of its hold by any subsequent events.    It thus appears clearly that if any such events occur by which the attaching creditor is left merely in the position of an ordinary creditor who has commenced suit, and the defendant dies before judgment is obtained against him, of course he has no preference over the general

creditors in the distribution of the defendant's estate. Even if judgment had been first obtained there would be no lien upon anything but land. But the advantage which the plaintiff gained by his attachment was not of such a character that it could hold a preference against other creditors, of its own force. The primary object being to compel an appearance, and that object being accomplished by the mere giving of bail, the hold upon the property attached is entirely gone. So that the process, in and of itself, is not the specific seizure or appropriation of the property attached, and there being no other claim upon the property attached to give a special preference to the attaching creditor, it necessarily follows that upon the death of the defendant before judgment, the attaching creditor has no preference that can be enforced against other creditors, and hence in case of such death, the attachment is dissolved.

The next case in which the doctrine was announced was Farmers' and Mechanics' Bank v. Little, 8 W. & S. 207. It was there held that in foreign attachment against a corporation as defendant, the civil death of the corporation before judgment against it, produced by the decree of forfeiture of its charter by a judicial tribunal dissolves the attachment. This is only another kind of illustration of the same doctrine announced in the preceding case. It was the death of a corporate body, instead of a natural person, but the same result logically followed, and the decision must be considered as a reaffirmance of the ruling in Willing v. Bleeker. This appears very decidedly in the course of the opinion by GIBSON, C. J., who said : " The judgment in the attachment suit establishes no more than the existence of the debt claimed by the attaching creditor from his immediate debtor; and the garnishee may therefore plead either that he owes nothing to any one, or that the ownership of the debt demanded from him had passed from his immediate creditor by assignment when the attachment was laid, or that the attachment had been dissolved by his death before final judgment. . . . It never has been doubted that the defendant's death before final judgment dissolves the attachment. . . . But the primary intent being to procure an appearance, a foreign attachment is dissolved the instant the defendant has appeared or lost his capacity to appear, because the law expects not impossibilities ; and this shows that the attaching creditor gains

no property in the thing by laying the attachment. It is security for the defendant's appearance merely, and it is released as soon as the condition has been performed or becomes impossible." In the foregoing case the attachment was issued in 1842, six years after the passage of the foreign attachment act of 1836, and the opinion was delivered in 1844, eight years thereafter, and this must be regarded as an answer to the contention that the act of 1836 made a change in this respect in the law as it was when the earlier decisions were made.

But the same doctrine was again announced in Hays v. Lycoming Fire Ins. Co., 99 Pa. 621, where we said: "The civil death of a corporation before judgment in a foreign attachment against it, dissolves the attachment, and the garnishee may take advantage of this by pleading it, notwithstanding judgment had been entered of record after such death for default of appearance."

In Trickett on Liens, sec. 426, it is said: "When goods devolve on the executor or administrator, they cease to be subject to attachment, otherwise the attaching creditor could disturb the order established by law for the payment of a decedent's debts. The defendant's death before final judgment dissolves the attachment. By analogy the dissolution of a corporation by a decree of forfeiture of its charter works the same result."

These citations establish the law in Pennsylvania on this subject with such effect that we could not now change it without overruling all of these authorities. We cannot discover any sufficient reason for doing so. We have examined and considered the very able argument of the learned counsel for the appellant with much care, but we are not convinced by it that there is any real occasion for now departing from a rule so well established as this appears to be, and we therefore feel obliged to hold that the assignments of error are not sustained.

Judgment affirmed.