**In re BROOKS FARMS, Debtor.**

**BROOKS FARMS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Agriculture Stabilization and Conservation Service and Commodity Credit Corporation, Defendants.**

Bankruptcy No. 85–02471.
Adv. No. 85–0328.

United States Bankruptcy Court,
E.D. Wisconsin.

Feb. 18, 1987.

Leon E. Jensen, Appleton, Wis., for plaintiff.

Nathan A. Fishbach, Asst. U.S. Atty., Milwaukee, Wis., for defendants.

### DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This case raises the issue of whether Commodity Credit Corporation ("CCC") may set off a $20,762.98 obligation to Brooks Farms ("debtor") against a separate obligation "in excess of $20,762.98"[1] due from the debtor to CCC. The issue has been submitted on the defendants' motion for summary judgment. A stipulation of facts has been filed by the parties.

---

1. The parties have stipulated to describe the debtor's obligation in this manner because a dispute may exist as to the amount of the debtor's obligation. By so doing, it will have no effect on the outcome of the setoff issue before the court.

The debtor is a partnership engaged in dairy farming. It is comprised of Edward Brooks and his two sons, Steven Brooks and Arthur Brooks. On March 16, 1984 (which was prior to the filing of its Chapter 11 petition), the debtor submitted an application to participate in the 1984 "Feed Grain, Rice, Upland Cotton and Wheat Program" ("Corn Deficiency Program"). On April 17, 1984, that application was approved by Agricultural Stabilization and Conservation Service ("ASCS") on behalf of CCC.[2] The purpose of the Corn Deficiency Program is to stabilize grain prices by providing incentives to farmers to limit corn production. Under this program, a participating farmer agrees to limit his corn crop acreage to no more than a permitted amount as specified in the agreement. That agreement also requires the participant to timely file a report evidencing such compliance. Under the agreement, CCC agrees to pay to the participating farmer a deficiency payment provided the calculated amount of such deficiency payment exceeds zero. The formula for arriving at this calculation is based upon several components, one of which is a "national weighted average market price," determined by the results of the first five months of the corn marketing year.[3] 7 C.F.R. ¶ 713.-108(a).

On July 15, 1984, the debtor filed a timely certification of compliance with the agreement.

On April 1, 1985, ASCS released the "national weighted average market price" for the 1984 corn crop. This, in turn, enabled CCC to calculate what sum, if any, was due to the debtor under the 1984 Corn Deficiency Program. That calculation resulted in $20,762.98 being due to the debtor.[4] On May 6, 1985, ASCS informed the debtor that the full amount of $20,762.98 was being withheld as reimbursement because of a balance due to CCC on a claim from the debtor exceeding $20,762.98. CCC's claim resulted from 1982 and 1983 corn storage loans, which were part of the Corn Deficiency Program, and from an advance deficiency payment to the debtor in connection with the 1983 Corn Deficiency Program, which deficiency payment was required to be refunded.

On July 3, 1985, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

The issues presented by virtue of this sequence of events are as follows:

1. Was there a right of setoff by CCC under § 553(a)?

2. If a right of setoff existed, was a limitation imposed upon its application by virtue of the "improvement in position" test found in § 553(b)?

3. Even if there was a proper right of setoff without any limitation, was it subject to avoidance as a preference under § 547?

An understanding of § 553[5] of the Bankruptcy Code is fundamental in analyzing these issues.

---

**2.** Wherever there is reference in this decision to CCC, ASCS or the United States Department of Agriculture, such reference shall be deemed to apply to all of these entities. CCC is a wholly-owned federal corporation within the United States Department of Agriculture. Because CCC has no employees, ASCS, a separate agency established by the Secretary of Agriculture with state and county committee offices, acts on behalf of CCC and administers all of the government programs, including the Corn Deficiency Program involved in this case.

**3.** The first five months of the corn marketing year are October, November, December, January and February.

**4.** There were two separate applications between the debtor and CCC covering two farm loca-

tions. This resulted in $14,903.07 being due under one application and $5,859.91 being due under the other application, which collectively totaled $20,762.98.

**5.** § 553. Setoff.

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title:

■ In order to establish a right to a setoff under § 553, the creditor must establish:

1. A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;
2. A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and
3. The debt and claim are mutual obligations.

*In re Fred Sanders Co.*, 33 B.R. 310 (Bankr.E.D.Mich.S.D.1983); *In re Morristown Lincoln-Mercury, Inc.*, 42 B.R. 413 (Bankr.E.D.Tenn.1984); *In re Taylor Motors*, 60 B.R. 760 (Bankr.D.Nev.1986).

■ In the instant case, CCC's claim against the debtor under the two corn storage loans and advance deficiency payment arose before the filing of the Chapter 11 case. The debt owed by CCC to the debtor also arose before the Chapter 11 filing. Although the precise time when the debt from CCC to the debtor arose is unclear, it is of no significance in this case because it had to have taken place before the Chapter 11 case was filed. This is because all of the possible alternative dates (date of execution of the Corn Deficiency Program contract, date of planting corn, date of determination of the national weighted average, date of calculation of the deficiency payment, date of application of setoff and date of notification to debtor of application of

setoff) occurred before the Chapter 11 petition was filed. The latest time at which the debt could possibly have been incurred would have been May 6, 1985 when the debtor was informed by CCC that the deficiency payment was being offset, and this was prior to the date the Chapter 11 petition was filed. The claim of CCC against the debtor and the debt owed by CCC to the debtor were mutual obligations because they were between the same parties, in the same right and in the same capacity. *4 Collier on Bankruptcy*, § 553.04 at 553–22 (15th Ed.).

The three exceptions to setoff under § 553(a)(1), (2) and (3) must also be examined to determine if any apply.

The first exception under § 553(a)(1) states that an existing right of setoff cannot be exercised to the extent that the creditor's claim against the debtor is not allowable in bankruptcy. Based upon the facts of this case, this exception has no application.

■ The second exception, under § 553(a)(2), prohibits the use of setoff by a creditor where a claim is acquired by the creditor against the debtor either after the filing of the Chapter 11 case or within 90 days before such filing and while the debtor was insolvent. This exception comes into focus where a claim is obtained by the creditor through assignment from a third party. *2 Norton Bankruptcy Law and Practice*, § 33.02. It is not relevant here

(2) such claim was transferred, by an entity other than the debtor, to such creditor—
 (A) after the commencement of the case; or
 (B)(i) after 90 days before the date of filing of the petition; and
 (ii) while the debtor was insolvent; or
(3) the debt owed to the debtor by such creditor was incurred by such creditor—
 (A) after 90 days before the date of the filing of the petition;
 (B) while the debtor was insolvent; and
 (C) for the purpose of obtaining a right of setoff against the debtor.
(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 365(h)(2) or 365(i)(2), of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within

90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
 (A) 90 days before the date of the filing of the petition; and
 (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
 (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.
(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

because at no time was there any transfer of a claim to CCC from a third party. The debtor argues that the claim was transferred from one governmental agency (ASCS) to another governmental agency (CCC) on May 6, 1985 during the 90 day pre-petition period and that this constituted a transfer. Although the setoff was exercised on May 6, 1985, the claim was always that of CCC and not of ASCS. There was never any transfer involved. The two promissory notes signed by the debtor in connection with the government corn storage loans specified that the obligations were "payable to the order of CCC." Likewise, the Corn Deficiency Program agreement specifically declared that CCC (not ASCS or any other party) was responsible for payment under that program.

■ The third exception, § 553(a)(3), is intended to be invoked where a debt was *incurred* within 90 days before the filing of the Chapter 11 petition, while the debtor was insolvent and for the purpose of obtaining a right of setoff against the debtor. In this case, as has been previously noted, the debt was clearly pre-Chapter 11. Based upon the particular facts involved, the date when it was determined that the deficiency payment was due may have been within the 90 day pre-petition period, if the court should find that CCC's debt was incurred either when the deficiency calculation was made or when the setoff was applied. However, neither of these findings would bring this case within § 553(a)(3). *In re Newell,* (Bky. 3–85–455, Bankr.Minn.1985), *In re Matthieson,* 63 B.R. 56 (D.Minn.1986) and *In re Isis Foods, Inc.,* 24 B.R. 75 (Bankr.W.D.Mo.1982), are authority for the proposition that a debt is incurred as of the inception date of the contract, even though the debt was not at that time either due or liquidated. That principle applied to the instant case compels a finding that CCC's debt was incurred more than 90 days before the filing of the Chapter 11 petition.

For the sake of argument only, even if the court accepted the premise that CCC's debt was incurred within the 90 day pre-petition period, there is nothing in the record to suggest that this debt was created for the purpose of obtaining a right of setoff against the debtor. § 553(a)(3) is intended to eliminate an opportunity for a creditor to engage in some form of manipulation at the expense of other creditors. Here, it was the debtor, not CCC, who initiated the application under the Corn Deficiency Program. Accordingly, the § 553(a)(3) exception must be ruled out.

■ The court is also required to address the issue of whether the exercise of the setoff is limited by the "improvement in position" test contained in § 553(b) of the Bankruptcy Code. § 553(b) states that where a setoff occurs within 90 days of bankruptcy, the trustee (or, in a case under Chapter 11, the debtor-in-possession) may recover the amount of setoff to the extent that such insufficiency, as of the date of setoff, is less than the insufficiency existing 90 days prior to the date the bankruptcy petition was filed. "Insufficiency" means an amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim. 11 U.S.C. § 553(b)(2). It requires a mathematical comparison of the insufficiency in existence 90 days before the Chapter 11 filing (in this case, April 4, 1985) with the insufficiency on the date that the setoff was exercised (in this case, May 6, 1985).

On May 6, 1985, CCC's claim against the debtor was the same as it was on April 4, 1985. On May 6, 1985, CCC's obligation to the debtor was the same as it was on April 4, 1985. Because CCC's claim and obligation both remained constant over the relevant period, there was no improvement in position. § 553(b) is therefore of no consequence.

■ Finally, the debtor argues that CCC's action constituted a voidable preference under § 547 because it was exercised within 90 days before the Chapter 11 petition was filed. When § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect. The enactment of § 553 was an expression of the Congressional intent sanctioning the exercise of

setoff as a permissible preference under certain circumstances. *In re Fox,* 62 B.R. 432 (Bankr.D.R.I.1986). While the Code does not expressly so state, it is implicit that issues concerning the substantive scope of setoff rights are not to be considered under the preference law, but are controlled under Code § 553. *2 Norton Bankruptcy Law and Practice,* § 33.01 at pp. 2–3.

*In re Balducci Oil Co., Inc.,* 33 B.R. 847, 852 (Bankr.D.Col.1983), declaring that § 547 cannot be used to avoid the setoff, states:

> "The general reason is that Congress defined 'transfer' in § 101(40) to exclude setoffs. If the act of setoff is not a 'transfer,' the preference test under § 547 cannot be satisfied because there was no transfer of property of the debtor—the initial element of section 547(b)."

*See also, In re Hinson,* 65 B.R. 675 (Bankr. W.D.Tenn E.D.1986) which holds that § 547 is inapplicable where a setoff is involved.

The debtor has cited *In re Hutterer,* 71 B.R. 219 (Bankr.E.D.Wis.1985) decided by this court's colleague, the Honorable Charles N. Clevert. In *Hutterer,* Judge Clevert, after finding that all the elements for a preferential transfer existed, avoided certain milk check payments as preferences. *Hutterer* forcused upon whether a debt incurred for the purpose of obtaining funds to purchase cattle was in the ordinary course of business and whether the milk check payments made on this obligation were made within 45 days after the debt was incurred. These findings were necessary in reaching a determination whether the § 547(c)(2) exception to the trustee's preferential avoidance powers existed. The specific issue of a valid setoff under § 553 was never raised in that case. Furthermore, invoking setoff is discretionary with the court. *4 Collier on Bankruptcy,* § 553.02 at 553–10 and 553–11 (15th Ed.). *See also, In re IML Freight, Inc.,* 65 B.R. 788 (Bankr.D.Utah 1986), which states at 792:

"[t]he right of setoff under Section 553 is neither automatic nor self-executing, nor is setoff mandatory. Its application, when properly invoked, rests in the discretion of the court."

Because of its equitable nature, the use of setoff is dependent upon the circumstances of each case.

CCC has exercised a valid setoff, and its motion for summary judgment dismissing the debtor's complaint for turnover of the funds is hereby granted without costs.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.