In re ALLEGHENY, INC. t/d/b/a Allegheny Paper Company; Allegheny Products Company; Allegheny Circulation Supply Company and A & E Plastics, Debtor.

ALLEGHENY, INC., Plaintiff,

v.

BASIC PACKAGING SYSTEMS, INC. and BPS Kansas, Inc., Defendant.

Bankruptcy No. 85–2136.
Adv. No. 87–252.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 27, 1988.

Amy Tonti, Eckert, Semans, Cherin & Mellott, Pittsburgh, Pa., for Allegheny, Inc.

Stephen J. Summers, Weis and Weis, Pittsburgh, Pa., for Basic Packaging Systems, Inc. and BPS of Kansas, Inc.

Joseph E. Schmitt, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before the Court is Debtor's Complaint for Recovery of Preferential Transfers against Basic Packaging Systems, Inc. ("Basic") and BPS Kansas, Inc. ("BPS").[1] BPS asserts that the transfer in question did not occur within ninety (90) days prior to the filing of the bankruptcy. Additionally, BPS argues that even if a preference did occur, Allegheny received new value for the transfer in question. Basic asserts that it never had any debtor-creditor relationship with Allegheny and therefore could not have received a prefer-ence. Allegheny responds that Basic and BPS are both creditors; in the alternative, Allegheny contends that Basic and BPS are actually one and the same, and seeks to pierce the corporate veil of BPS, so as to render Basic a creditor.

Based upon the evidence adduced at trial and through further research by this Court, we find that both Basic and BPS are creditors who received preferential transfers, and judgment will be entered against each jointly and severally.

### FACTS

Allegheny, Inc. ("Allegheny") is a Pennsylvania corporation. Basic Packaging Systems, Inc. ("Basic") is incorporated under the laws of Ohio. BPS Kansas, Inc. ("BPS") is a wholly-owned subsidiary of Basic, registered as a Kansas corporation. Although BPS operated its production and distribution facilities in Kansas, it maintained all of its books, records, bank accounts and other administrative functions in Basic's Ohio offices. Basic and BPS have also filed consolidated tax returns; however, all of their records have been separately maintained and no commingling of funds has occurred.

At some time during 1984, Allegheny had a business relationship with BPS, wherein Allegheny placed merchandise orders with BPS and BPS shipped same. At some point Allegheny fell behind in its payments to BPS, and BPS filed suit against Allegheny in the District of Johnson County, Kansas. The parties reached a settlement on June 20, 1985, which included the dismissal of the Kansas lawsuit, provision for a schedule of payments to be determined at a later date, and signed personal guarantees from all of Allegheny's principals. The payment schedule was finalized on July 9, 1985, and included an inventory transfer, valued at $319,865.32, from Allegheny to BPS. Thereafter, as part of the settlement, Allegheny made cash payments totalling $80,427.78; Allegheny also received $12,050.99 in new inventory from BPS. Therefore, the total amount paid through

1. This Adversary case constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

this settlement agreement, subject to preference investigation, was $388,242.11. On September 23, 1985, seventy-six (76) days after the first transfer occurred, Allegheny filed a voluntary Chapter 11 petition.

On October 17, 1985, a lawsuit was filed by Basic and BPS against Allegheny and its principals in the United States District Court for the Northern District of Ohio. In said suit, the following averments were made:

[8.] On or about June 20, 1985, at Avon Lake, Ohio, BASIC PACKAGING, by and through its subsidiary, BPS KANSAS, and defendant ALLEGHENY, entered into a written settlement agreement, whereby it was determined that there was due and owing to BASIC PACKAGING, by and through BPS KANSAS the amount of $63,359.02 ... This written agreement was entered into at the office of BASIC PACKAGING ...

[9.] Said settlement agreement reflected monies due and owing for goods sold prior to June 20, 1985, by BASIC PACKAGING, by and through BPS to ALLEGHENY.

[20.] On or before March 11, 1985, ALLEGHENY entered into an agreement with BASIC PACKAGING, by and through BPS KANSAS whereby BASIC PACKAGING was to produce and deliver plastic goods to said defendant. As a result of said agreement BASIC PACKAGING did in fact manufacture goods and delivered same at ALLEGHENY's instructions to ALLEGHENY warehouses. As of July 5, 1985, there was a balance due to BASIC PACKAGING, the sum of $393,612.67 ...

The suit was dismissed as to Allegheny due the filing of the bankruptcy; however, the suit proceeded against Allegheny's principals based upon the personal guarantees executed as part of the settlement agreement.[2]

Upon questioning at trial on this preference action, the witness for Basic completely contradicted the Ohio Complaint and asserted that Basic was not a creditor of Allegheny, and in fact Basic produced no goods whatsoever. The testimony of this witness indicated, in a cavalier fashion, that Basic was made a Plaintiff in the Ohio lawsuit only because the lawyers, jointly representing both Basic and BPS, were based in Ohio, and wished to bring suit in a convenient venue.

## ANALYSIS

Allegheny asserts that Basic and BPS were the recipients of preferential transfers in the sum of $388,242.11. Section 547(b) of the Bankruptcy Code outlines the requirements necessary to prove a preference:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) *to or for the benefit of a creditor;*

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) *on or within 90 days before the date of the filing of the petition* or,

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(Emphasis added)

 The burden of proving the statutory elements of preference, by a preponderance of the evidence, is on the trustee of debtor-in-possession. *In re Bullion Reserve of*

---

2. The facts of this case are admittedly convoluted. It is beyond our scope to determine the logic of counsel in filing the Ohio lawsuit after apparent consummation of the Settlement. We state these facts in chronological order in which they have been received.

*North America,* 836 F.2d 1214 (9th Cir. 1988); *Brown v. First National Bank of Little Rock,* 748 F.2d 490 (8th Cir.1984); *In re H & A Construction Co.,* 65 B.R. 213 (Bankr.E.D.Pa.1986). The Code provides a statutory presumption of insolvency for the ninety (90) day period immediately prior to the bankruptcy filing. *See* 11 U.S.C. § 547(f). At least one Circuit Court has held that the party defending against the preference action, therefore, has the burden of proving the debtor's solvency. *WJM, Inc. v. Mass. Dept. of Welfare,* 840 F.2d 996 (1st Cir.1988). *See also In re World Financial Services Center, Inc.,* 78 B.R. 239 (9th Cir.B.A.P.1987).

Once the debtor has met its required burden, the transferee must prove that the preferential transfer falls within one or more of the statutory exceptions to the trustee's avoiding powers. *In re Bullion Reserve of North America, supra; In re Fasano/Harriss Pie Co.,* 71 B.R. 287 (W.D. Mich.1987); *In re Western World Funding Inc.,* 54 B.R. 470 (Bankr.D.Nev.1985); *In re Independent Clearing House Co.,* 41 B.R. 985 (Bankr.D.Utah 1984); *In re Haynes,* 28 B.R. 136 (Bankr.M.D.Tenn. 1983).

### I. Basic

Basic asserts that it cannot be the recipient of a preferential transfer because it is not and has never been a creditor of Allegheny. Allegheny argues that Basic is a creditor: first, Allegheny contends that Basic and BPS are really one entity, making any debt owed to BPS a debt owed to Basic; and second, Allegheny challenges Basic's assertion in light of its averments in the Ohio litigation. We turn first to the latter argument.

Many circuit courts have held that federal courts have the authority to take judicial notice of proceedings in other courts, either within or without the federal system, provided those proceedings are directly related to the matters presently at issue. *E.I. DuPont De Nemours & Co., Inc. v. Cullen,* 791 F.2d 5 (1st Cir.1986); *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364 (7th Cir.1983) *cert. denied,* 461

U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corporation;* 605 F.2d 1169 (10th Cir.1979); *Rhodes v. Houston,* 309 F.2d 959 (8th Cir.1963), *cert. denied,* 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); *St. Paul Fire & Marine Insurance Company v. Cunningham,* 257 F.2d 731 (9th Cir.1958). *See also Zahn v. Transamerica Corporation,* 162 F.2d 36 (3rd Cir.1947).

Having so said, we take judicial notice of the record in the Ohio lawsuit, to-wit:

1. Basic and BPS filed suit against Allegheny and its principals on October 17, 1985;

2. The suit against Allegheny was for Breach of Contract (the Settlement Agreement), Goods Sold and Received, and Account Stated, in the sum of $58,039.00.

3. The Counts against Allegheny's principals were based upon their personal guarantees of Allegheny's debt. Said guarantees were a vital part of the June 20, 1985 settlement of the Kansas litigation.

4. On November 7, 1985, the Court entered an Order dismissing Allegheny as a defendant in the action; however, the action against the principals continued.

5. A jury trial occurred between Basic/BPS and the Allegheny principals from July 28, 1986 through July 30, 1986.

6. On July 30, 1986, the jury returned verdicts against each of the defendants, Allegheny's principals, jointly and severally, in the sum of $58,-039.00 as a result of their personal guarantees of Allegheny's debt, incurred in the June 20, 1985 settlement agreement.

7. On July 31, 1986, the Court entered Judgment on the jury verdicts.

Although neither party has raised the issue of judicial estoppel, we feel compelled by the facts as discussed above to analyze this case in light of that principle. The doctrine of judicial estoppel was first artic-

ulated by the Third Circuit in the case of *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953) which held:

> A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing "fast and loose with the courts" which has been emphasized as an evil the courts should not tolerate.

The Western District of Pennsylvania has also addressed the doctrine of judicial estoppel. In *Wade v. Woodings–Verona Tool Works, Inc.*, 469 F.Supp. 465, 476 (W.D.Pa.1979) Judge Teitlebaum adopted a broader interpretation of the principle:

> A party may be precluded by a prior position taken in litigation from later adopting an inconsistent position in the course of a judicial proceeding.

Recently, Judge Mencer has also adopted a broad definition of judicial estoppel:

> ... a party may be judicially estopped from asserting a legal position which is inconsistent with both a successfully and an unequivocally asserted position in a prior proceeding.

*Erie Telecommunications, Inc. v. City of Erie*, 659 F.Supp. 580, 584 (W.D.Pa.1987). Unlike equitable estoppel, the more flexible policy of judicial estoppel does not require detrimental reliance by the opposing party *or* privity of parties between the two actions. *Id.*

In the 1985 Ohio lawsuit, Basic averred that by and through BPS, it: (1) entered into a settlement agreement with Allegheny; and (2) was a substantial creditor of Allegheny. These same allegations were raised as to Allegheny's principals, pursuant to their personal guarantees, part and parcel of said settlement agreement. Although the suit against Allegheny was dismissed due to the bankruptcy filing, Basic maintained its position as to the princi-

pals. Basic and BPS received a favorable jury verdict and obtained judgments against the principals. Two years later, in its answer to this Complaint, and now at trial, Basic asserts that it has never had any relationship with Allegheny, including any settlement agreement; that it has neither produced nor delivered any product to or for Allegheny, and that Allegheny did not owe Basic any money for any reason.

This is a classic case of playing fast and loose with the Court. This litigation scenario is reprehensible; and cannot and will not be permitted to prevail. Since Basic has previously admitted to being a creditor, and obtained a judgment for same, Basic will not now be heard to deny this relationship. Basic is and/or shall be deemed a creditor of Allegheny.

Having so decided, it is unnecessary to pursue the veil piercing argument raised by Allegheny.

## II. Basic and BPS

Basic and BPS are creditors of Allegheny, and they did receive property in which Allegheny had an interest. Basic and BPS raised several defenses in their Answer to Allegheny's Complaint including:

1. the payment was not on account of an antecedent debt § 547(b)(2);

2. Allegheny was not insolvent § 547(b)(3); and

3. the transfer occurred outside the preference period § 547(b)(4)(A).

Additionally, Basic and BPS assert that even if a preference did occur, same is not avoidable because:

1. the transfer was a contemporaneous exchange § 547(c)(1);

2. the transfer was in the ordinary course of business; § 547(c)(2) and

3. Allegheny received new value § 547(c)(4).

By the time of trial, Basic and BPS had reduced their defenses to the issue of transfer within the ninety (90) day preference period.[3]

---

**3.** At closing argument Basic and BPS again raised the issues of new value and ordinary course of business, and we granted counsel an opportunity to brief those issues. Upon receipt

Basic and BPS assert that the transfer of property occurred on June 20, 1985, when the parties entered into a Settlement Agreement, including dismissal of the Kansas litigation. This agreement was reached ninety-five (95) days before Allegheny filed bankruptcy. Allegheny contends that the earliest possible date of transfer would be July 9, 1985, the date on which the Settlement Agreement was finalized as to amounts of inventory to be returned and cash payments to be made. By letter dated July 9, 1985, Allegheny directed the warehousemen ("Total Distribution") to transfer certain inventory valued at $319,865.32 from Allegheny to Basic and BPS. Thereafter, the following money payments were made:

| | | |
|---|---|---|
| July 10, 1985 | check | $20,000.00 |
| July 17, 1985 | wire transfer | $20,000.00 |
| July 23, 1985 | wire transfer | $20,000.00 |
| July 30, 1985 | wire transfer | $15,625.22 [4] |

The pertinent statutory language for determining the date of transfer is found at 11 U.S.C. § 547(e)(1)(B) which states:

(e)(1) For purposes of this section— ...

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

■ On June 20, 1985, Basic and BPS entered into a Settlement Agreement with Allegheny, and the Kansas litigation was dismissed. No Court Order was entered, which granted Basic and BPS a perfected interest in the property subject to the settlement, superior to the interest of any other party. The Settlement Agreement, therefore, carried no more weight than any other contract between any two parties. Until property was actually in the possession of Basic and BPS, any creditor could have obtained a judicial lien which would have been superior to the interest of Basic and BPS. The earliest date upon which Basic and BPS obtained actual possession

was on July 9, 1985, the date on which Allegheny directed Total Distribution to make the inventory transfer. That date is clearly within the preference period.

Similarly, Basic and BPS has no perfected interest in any of the cash payments until each was made. At any time prior to said payments, a judicial lien creditor could have executed against those funds. Therefore, these transfers occurred on July 10, 17, 23, and 30, respectively. All of those dates also occurred within the preference period.

Having so stated, an Order will be entered finding for Allegheny and against Basic and BPS in the sum of $388,242.11.

---

of said brief, we noticed that counsel has wisely chosen not to pursue those arguments further.

4. Allegheny made additional payments of $4,802.53 and received merchandise from Basic and BPS worth $12,050.99. Therefore, the total amount asserted as a preference is $388,242.11.