**In re ASPEN DATA GRAPHICS, INC., Debtor.**

**ASPEN DATA GRAPHICS, INC., Plaintiff,**

v.

**John BOULTON and Jeyan Boulton, Defendants.**

**Bankruptcy No. 88–11140F.
Adv. No. 89–200F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 19, 1990.

Anthony J. Pasquariello, Wolf Block Schorr and Solis–Cohen, Philadelphia, Pa., for debtor/plaintiff, Aspen Data Graphics, Inc.

Gary M. Schildhorn, Ellen M. Nicholson, Adelman Lavine Gold & Levin, Philadelphia, Pa., for defendants, John Boulton and Jeyan Boulton.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtor-plaintiff, Aspen Data Graphics, Inc., has initiated this adversary proceeding to avoid and recover, on the basis of 11 U.S.C. § 547(b), certain prepetition

transfers made to the defendants.[1] The parties basically agree that the facts are undisputed, and suggest that the issue before me is whether the debtor possessed an interest in the funds at the time certain transfers took place (that is, within ninety days prior to the filing of the chapter 11 petition in bankruptcy). The following facts are relevant to the dispute *sub judice*.

The debtor entered into a lease agreement with the defendants as lessors on November 21, 1983. This agreement leased for a two year period (from January 1, 1984 through December 31, 1985) certain commercial real estate which was to be used as general administrative and sales offices by the debtor. Ex. D-4, Lease Agreement (part of the certified record from the Office of the Prothonotary, Bucks County, Pennsylvania). The lease sets monthly rent at $1,916.67; the lease also calls for payment of a security deposit in that amount to the lessors, which deposit was held (under the lease terms) by a realty group, in an interest bearing escrow account, "with interest to follow the principal at the expiration or termination of this transaction." Lease Agreement, clause 8. The lease further states that

> [e]xcept for such sum as shall be lawfully applied by Lessor to satisfy valid claims against Lessee arising from defaults under this lease or by reason of damages to the demised premises, the Security deposit ... shall be returned to Lessee at the expiration of the term of this lease or any renewal or extension thereof.... It is understood that no part of any security deposit ... is to be considered as the last rental due under the terms of the lease.

*Id.* The lease agreement also provides that the lessors may confess judgment against the lessee for money damages and/or for repossession of the property upon default under the lease.

On January 21, 1985 the lessors confessed judgment in state court against the debtor in the total amount of $25,746.00.[2] Ex. D-4, Confession of Judgment. On approximately January 22, 1985, the writ of execution of this judgment was delivered to the Sheriff of Bucks County, who on January 29, 1985 served the writ upon the debtor's bank, Bucks County Bank and Trust Company. The total funds in debtor's account so garnished equalled $30,169.78.

A petition to open judgment was filed by the debtor on January 31, 1985. On March 1, 1985, the state court ordered that all proceedings in execution and garnishment were to be stayed pending disposition of the petition to open judgment; that order further directed the debtor's bank to make monthly rental payments from the garnished account to the lessors. *See* Ex. D-4, Order of March 1, 1985.

Counsel for the parties to the lease stipulated, and the state court thereupon ordered, that the confessed judgment be opened; an amended complaint and a responsive pleading shall be filed; the garnishment shall remain in effect; and all proceedings brought by the lessee to dissolve the garnishment attachment were withdrawn. Ex. D-4, Stipulation and Order, May 12, 1986 and May 13, 1986 respectively.

Related litigation between these parties commenced on, approximately, November 18, 1985, when the debtor/lessee filed a petition for a preliminary injunction against the defendants. Pursuant to this request the state court required the petitioners to "post a bond or security in the amount of $7,500.00 in accordance with Pa.R.C.P. 1531(b)," to insure that the leased property

---

1. Under § 547(b), the trustee retains the power to avoid preferential transfers. 11 U.S.C. § 1107(a) gives the debtor in possession substantially the same powers as the trustee has under the Code. *See, e.g., In re Xonics Photochemical, Inc.,* 841 F.2d 198 (7th Cir.1988); *In re Pinto,* 89 B.R. 486 (Bankr.E.D.Pa.1988).

2. The defaults alleged in the confession include the lessee's failure to give the lessor a security interest in goods and property, as required by the lease; failure to pay "the balance of rent due May, 1984" in the amount of $425.00; failure to pay "overusage utilities due the landlord" in the amount of $1,095.00; *acceleration of rent for 12 months, $23,000.00;* and an attorney's commission of $1,226.00.

was restored to its original condition. Ex. D–1. This bond was posted.

The lessee vacated the leased premises on December 31, 1985. The litigation growing out of this leasing arrangement proceeded, until the various claims were resolved by stipulation and order on March 2, 1988. Pursuant to the stipulation and order, the entire amount then remaining in the garnished bank account was to be paid to the lessors; the $7,500.00 bond plus interest held in escrow by the state court prothonotary was to be paid to the lessors; and the $1,916.67 plus interest held by the realty group (the lessee's security deposit) was also to be paid to the lessors.[3] Ex. D–4, stipulation and order, March 2, 1988. These lawsuits were marked by the state court as "satisfied." Ex. D–4.

As the debtor's chapter 11 petition was filed on April 4, 1988, these payments in satisfaction of the stipulation and court order occurred within the 90 day preference period of 11 U.S.C. § 547. Because the analysis for each differs somewhat, I shall discuss each of the three payments of funds *seriatim*.

### A.

■ My view of the dispute over the allegedly preferential transfer of the garnished bank account funds is different from that of the parties. The debtor presents an argument which concludes that it alone retained an interest in these garnished funds at the time of the disputed transfer which, it argues, compels the result that the transfer of its interest was preferential. Specifically, the debtor posits that the confessed judgment was opened and never finally determined on the merits; therefore, it argues, the garnishment was "dissolved *ab initio*, under Pennsylvania law, as of the date that the funds were transferred." Plaintiff's Brief, at 3. However, I note that, pursuant to Pa.R.C.P.

2959(f), the lien created upon a judgment by confession is preserved while the proceedings to strike off or open the judgment are pending. *See Macioce v. Glinatsis*, 361 Pa.Super. 222, 522 A.2d 94, 96 (1987). Furthermore, that the final judgment was entered by stipulation does not weaken its effect as a final judgment. Thus, the debtor's reliance on the case *Sophia Wilkes Bldg. & Loan Assoc. v. Rudloff*, 348 Pa. 477, 35 A.2d 278 (1944) is inapposite.

The defendants essentially argue that the transfer of all the debtor's interest in the bank account funds occurred at the time the writ of execution was served on the bank, well before the preference period, and so the action to recover must fail under Section 547(b)(4).[4] I disagree that the garnishment deprives the judgment defendant of any title or any interest in the property.

Under Pennsylvania law, the effect of the garnishment in January 1985 was to create a lien in favor of the defendants on the bank account funds. Pa.R.C.P. 3111(b); *In re Consolidated Container Carriers, Inc.*, 254 F.Supp. 605, 607 (E.D.Pa.1966), *aff'd*, 385 F.2d 362 (3d Cir.1967) (holding that a writ of foreign attachment is a lien within the meaning of the former Bankruptcy Act); *In re Decker*, 27 B.R. 184 (Bankr.M.D.Pa.1983); *Helms v. Chandler*, 423 Pa. 77, 223 A.2d 30 (1966); *Reynolds v. Nesbitt*, 196 Pa. 636, 46 A. 841 (1900). *See generally* 17 *Standard Pennsylvania Practice* 2d § 94:3 (1983 & Supp.1989). Thus, at the time of the 1985 garnishment the defendants became secured creditors of the debtor with the collateral defined as the frozen bank funds.

The creation of a lien is a transfer within the meaning of the Bankruptcy Code, 11 U.S.C. § 101(50), and certainly had this garnishment occurred during the ninety day preferential period prior to bankruptcy it could have been challenged. *E.g., Metcalf v. Barker*, 187 U.S. 165, 174, 23 S.Ct. 67,

---

**3.** The total amount to be paid to the defendants/lessors was reduced by $987.50, which was paid by the bank to the bank's attorneys for their work on the garnishment matter. Ex. D–2.

**4.** In its posttrial brief the defendants also argue that because the debtor failed to produce evi-

dence of its insolvency at the time of the transfer, the action must fail under section 547(b)(3). However, section 547(f) creates a presumption of debtor insolvency during the ninety day preferential period, which the defendants failed to rebut.

70, 47 L.Ed. 122 (1902) (decided under the former Bankruptcy Act); *In re B–Way Construction*, 68 B.R. 651 (Bankr.D.Or. 1986); *In re McCoy*, 46 B.R. 9 (Bankr.D. Ariz.1987) (garnishment lien perfected within 90 day period prior to bankruptcy constituted avoidable preference). However, where, as here, the lien is obtained before the preference period commenced, no preferential transfer is thereby created. *In re McCoy*.

 A second transfer occurred, though, when the garnished funds were paid over to the judgment plaintiffs, the instant defendants, and it is this transaction that, in essence, is challenged as a preference. Each of the requirements of § 547(b) must be met in order to avoid a transfer under this section. *E.g., Dent v. Martin*, 86 B.R. 290 (S.D.Fla.1988); *In re Cockreham*, 84 B.R. 757 (D.Wyo.1988). The burden of proof to establish each of these elements rests with the trustee (or debtor in possession), *In re Philadelphia Light Supply Co.*, 33 B.R. 734 (Bankr.E.D. Pa.1983); this burden is met by a showing of preponderance of evidence. *In re Allegheny, Inc.*, 86 B.R. 466 (Bankr.W.D.Pa. 1988); *In re Sbraga*, 27 B.R. 199 (Bankr.M. D.Pa.1982). Upon review, I must conclude that the payment made to the defendants from the garnished bank account cannot be avoided as a preference under 11 U.S.C. § 547.

Pursuant to § 547(b)(5), a transfer may be set aside only if the transferee received more than it would have received through a chapter 7 liquidation; to prove this element the trustee merely has to show that the creditors would receive less (here, that they would receive less than all of the garnished funds) in liquidation. *In re Western World Funding, Inc.*, 54 B.R. 470 (Bankr. D.Nev.1985).

Under 11 U.S.C. § 725,[5] collateral is to return to the holder of the security interest. The legislative history of this section instructs that its purpose "is to give the court appropriate authority to ensure that collateral or its proceeds is returned to the proper secured creditor.... The section is in lieu of a section that would direct a certain distribution to secured creditors." H.Rep. No. 95–595, 95th Cong., 1st Sess. 382–383 (1977), U.S.Code Cong. & Admin. News 1978, 5787, 6338–6339. Thus, had the instant defendants not received the funds from the garnished bank account prior to bankruptcy, in a chapter 7 liquidation they would have received the funds through a distribution pursuant to § 725. The effect, then, of the March 1988 stipulation was to permit the defendant to "foreclose" upon its collateral—a transfer which is not preferential. *Accord, e.g., Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir.1990) (payment of an equitable lien is not preferential); *Metcalf v. Barker; Walutes v. Baltimore Rigging Co.*, 390 F.2d 350, 352 (4th Cir.1968) (payment within preferential period, upon a lien created prior to that period, is not a preference); *United States Fidelity & Guaranty Co. v. Sweeney*, 80 F.2d 235, 239 (8th Cir.1935); *In re Ryder*, 59 B.R. 868 (Bankr.S.D.Fla.1986) (payment received during 90 day preference period not preferential, where lien of the writ of garnishment attached prior to the preferential period); *In re Syed Industries Corp.*, 58 B.R. 920, 923 (Bankr.E.D.N.Y.1986) (payments on a judicial lien created before preferential period, yet made within 90 day period prior to the bankruptcy filing, may not be avoided). Having failed to meet one of the elements of § 547, the debtor's complaint as to these funds must be denied.

The debtor's only available means of defeating this particular transfer would be by way of setting aside the underlying lien. The debtor, a Pennsylvania corporation, does not argue that the involuntary security interest in the funds may be set aside as a judicial lien pursuant to § 522(f), to the extent that the lien so created impairs ex-

---

5. This section states in its entirety:
 After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

emptions.[6] Nor are other means advanced by the debtor for setting aside the lien. Thus, I see no basis upon which to disturb this transfer.

### B.

■ I also conclude that the funds which had been held in escrow by the state court and transferred to the creditor during the preferential period cannot be returned to the debtor under § 547(b). The debtor[7] placed the funds in escrow upon order of that court to insure that the leased premises were restored to their original condition, following a hearing on the debtor's motion for a preliminary injunction against the defendants. The transfer of these funds cannot now be set aside as preferential, for related reasons.

An order finding that the transfer of funds was preferential for purposes of § 547(b) could only order the funds returned to escrow with the Bucks County Prothonotary, not to the debtor.[8] All that this court could do under this section is void the transfer; the funds would return to their pretransfer status. As the escrow agreement itself is not invalidated, the creditor is not receiving more than it would have received through a chapter 7 liquidation. The debtor thus is not availed in any way, for it would then have to look to the state court for return of this fund, and the state court has already made a determination as to whom the funds should be delivered.

■ I find, in addition, yet another basis for deciding that these funds were not the subject of a voidable, preferential transfer. Section 547(e)(1)(B) of the Code defines "transfer" for the purpose of preference litigation and analysis. It states in relevant part:

For purposes of this section—

(B) a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

Therefore, in order to determine when the transfer occurred, it first must be determined when, under applicable Pennsylvania state law, *In re Conner,* 733 F.2d 1560 (11th Cir.1984), the transfer was perfected. That is, the question becomes whether a judgment lien creditor of the debtor could have acquired an interest greater than that of the defendants in the escrowed funds by attaching those funds prior to the court's release of the funds to the defendants. *In re Coco,* 67 B.R. 365, 369 (Bankr.S.D.N.Y.1986).

As the funds in question were ordered by the state court to be held in escrow by an officer of that court, pursuant to Pa.R.C.P. 1531(b), it appears that these funds were being held subject to the doctrine of *in custodia legis.* This doctrine, long-established in the law of Pennsylvania, *see Bulkley v. Eckert,* 3 Pa. 368 (1846), generally provides that funds in the possession of the Commonwealth or one of its political subdivisions, owing to individuals, are not subject to attachment. *Buchholz v. Cam,* 288 Pa.Super. 33, 430 A.2d 1199 (1981). This protection arises from the public policy concern that "the government should be free from the annoyance and uncertainty arising out of disputes between the individuals to whom the money is owed and those claiming a right to the same funds by garnishment." *Id. See also Commonwealth v. Mooney,* 172 Pa.Super. 30, 92 A.2d 258 (1952).

Thus, it appears that the transfer occurred, and was perfected in favor of the defendants, for purposes of § 547(b), when the funds were placed in escrow with the state court. *Accord In re Coco,* 67 B.R. at

---

6. Exemption rights are available to individual debtors only. *See* § 522(b).

7. The defendants argue that the debtor did not post this bond with the Bucks County Court of Common Pleas, as this fund was posted only by Aspen Fulfillment Services, Inc. Concluding as I do that the funds cannot be ordered returned, I need not address the issue of whether the debtor also deposited these funds.

8. The escrow was established in November 1985, long before the debtor filed a bankruptcy petition, and so is outside the preference reachback period.

369 ("cases are uniform in holding that it is the debtor's *deposit* of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes") (emphasis in original). *See also In re Newcomb*, 744 F.2d 621, 627 (8th Cir.1984); *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr.S.D.N.Y.1985).[9]

### C.

■ Finally, I address the issue of whether the state court's ordered release of the security deposit to the defendants is a voidable transfer. The parties present arguments which purport to show that the debtor either did or did not retain an interest in the security deposit, believing this to be dispositive of the transfer question. I find, however, that the landlord held a secured interest in the sums held on deposit, and that the sums properly were setoff prepetition, and so conclude that the transfer may not be avoided.

■ Section 506 of Title 11 states that a claim is secured to the extent that the claim is subject to a right of setoff under 11 U.S.C. § 553. This provision of the Code recognizes the right of the creditor to setoff a mutual debt owed to the debtor, with certain limitations.[10] Setoff is commonly viewed as a type of preference permitted by statute. *Matter of Moses*, 91 B.R. 994, 996 (Bankr.M.D.Fla.1988). That is, without the provisions of § 553 (and § 506), any attempt to offset a mutual debt between a creditor and a debtor arguably would amount to a preference under § 547 and could, therefore, be avoided. *See generally In re Fox*, 62 B.R. 432 (Bankr.D.R.I. 1986). Once the right of setoff has been established, the provisions of § 547 may not be utilized, as the two statutes are

deemed mutually exclusive remedies. *E.g., Lee v. Schweiker*, 739 F.2d 870, 873 n. 4 (3d Cir.1984); *In re Brooks Farms*, 70 B.R. 368, 372 (Bankr.E.D.Wis.1987); *In re Hinson*, 65 B.R. 675, 677 (Bankr.W.D.Tenn. 1986).

■ The right of setoff depends upon the existence of mutual obligations between the debtor and creditor, both of which arose prior to the commencement of the bankruptcy case. *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1035 (5th Cir.1987); *In re L.P. Maun, M.D., Ltd.*, 92 B.R. 790 (Bankr.S.D.Ill.1988), *modified on other gnds*, 105 B.R. 464 (S.D.Ill.1989); *In re Brooks Farms*, 70 B.R. at 371. Here, the debtor unquestionably owed, prepetition, a debt to its lessor. Had the debtor performed fully and satisfactorily under the lease agreement, the lessor would have owed the debtor the entire amount of the funds held on deposit for security of performance. Thus, it is understood that a right of setoff potentially exists when a creditor possesses a security deposit to insure future payment. *See, e.g., Brooks Shoe Mfg. Co. v. United Tel. Co.*, 39 B.R. 980, 982 (E.D.Pa.1984); *In re Northeastern Intern. Airways, Inc.*, 99 B.R. 487, 488 (Bankr.S.D.Fla.1989).

Indeed, a lessor may setoff the amount of a security deposit under a lease against a prepetition claim for rent and damages owed to the landlord, as these are mutual, prepetition obligations. *See Wright v. Olive*, 16 F.2d 270 (5th Cir.1926); *In re Scionti*, 40 B.R. 947 (Bankr.D.Mass.1984); *In re Lackow Bros., Inc.*, 22 B.R. 1022 (Bankr.S. D.Fla.1982). *See also* 4 *Collier on Bankruptcy* ¶ 553.04 at 553–23 (15th ed. 1989) ("... a landlord may normally set off a security deposit against its claim for prepetition rent, even if state law provides, for

---

**9.** It may also be true that, upon deposit of funds into escrow, the depositing debtor loses control over those funds, retaining only a contingent right to them. As a subsequent judgment or release of money would not deprive the estate of value, *see Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351 (5th Cir.1986), the judgment and transfer of funds to the defendants would be "a transfer of no moment for preference purposes." *In re Coco*, 67 B.R. 370. *See also In re Newcomb*, 744 F.2d at 626. I need

not discuss Pennsylvania law on this point, however, as sufficient bases for deciding not to void the transfer have already been established.

**10.** This statutory provision considers both setoffs postpetition, for which relief from the automatic stay is required, 11 U.S.C. § 362(a)(7), and prepetition setoffs. The latter are governed by the additional provisions of § 553(b).

the protection of the lessee, that the lessee retains title to the deposit and that the landlord must hold it, in trust, in a separate account") (citations omitted). As the lessors in the instant matter did hold a security deposit which lawfully could be applied to satisfy the lessors' claims arising from defaults under the lease or damage to the premises, see Ex. D-4, Lease Agreement, clause 8, they were entitled to offset the prepetition debt owed to them, even absent the order of the state court, providing that none of the exceptions or limitations contained within § 553 apply.

I easily conclude that the three exceptions to setoff provided by § 553(a) would not have applied in the matter *sub judice*. Section 553(a)(1) deals with disallowance of claims; this concern is not relevant, given the instant facts. Subsection (a)(2) prohibits setoff of a creditor's claim against the debtor where the claim was acquired from a third party; here, of course, there was no such transfer. The third limitation, § 553(a)(3), may be invoked where a debt owed to the debtor by the creditor was incurred within 90 days prepetition, for the purpose of obtaining a right of setoff against the debtor. Again, it cannot seriously be argued that the instant creditor's claim against Aspen Data did not arise long before the 90 day protected interval.

Here, though, the setoff occurred prepetition and so is also governed by § 553(b). 4 *Collier on Bankruptcy* ¶ 553.05[1] (15th ed. 1989). Subsection § 553(b) states that the right of setoff will be limited to the extent that the creditor improved its position during the 90 day reachback period.[11] That is, where a setoff occurred within 90 days before the commencement of bankruptcy, the trustee (or, as here, the debtor in possession) may recover the amount of setoff to the extent of a reduction of the insufficiency within a certain time frame. "Insufficiency" is defined at § 553(b)(2) as the amount by which a claim against a debtor exceeds a mutual debt owing to the

debtor by the holder of such claim. Under § 553(b), the amount to which the setoff may be recovered is determined by comparing the insufficiency in existence 90 days before the filing (or, if later, the first date on which there was an insufficiency, *see In re Fox*) with the insufficiency on the date of setoff. The trustee or debtor in possession is entitled to recover the amount by which the former amount exceeds the latter. *E.g., Braniff Airways, Inc. v. Exxon Co.,* 814 F.2d at 1040. *See generally* 4 *Collier on Bankruptcy* ¶ 553.08[3] (15th ed. 1989). The Third Circuit Court of Appeals has noted that the congressional concern in enacting this "improvement in position" test was that

> creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the "insufficiency," to the detriment of the other creditors.... A bank with a continuing relationship with the debtor could not only anticipate the bankruptcy filing, but also pressure the debtor to increase its deposits, or reduce its short-term loans to the debtor.

*Lee v. Schweiker,* 739 F.2d at 877.

Thus, § 553(b) requires a mathematical comparison of the insufficiency in existence on January 5, 1988 (90 days before the filing of this debtor's chapter 11 bankruptcy petition on April 4, 1988) with the insufficiency on the date the setoff was exercised, March 2, 1988.[12] However, I conclude that the lessors did not improve their position *vis-a-vis* the debtor during the reachback period.

If any "insufficiency" existed on January 5, 1988, it would be measured by the difference between the amount owed by the debtor to the lessor less the amount held by the lessor in escrow. By paying to itself the escrow during the ninety day period the lessor has neither increased nor

---

**11.** This test is similar to the improvement in position test found at 11 U.S.C. § 547(c)(5).

**12.** *See* Ex. D-4, where by stipulation and order of the state court dated March 2, 1988 the secur-

ity deposit was to be paid to the lessors, and this matter was marked by the state court as "satisfied."

decreased this difference or insufficiency. Furthermore, because the claims between the debtor and lessor remained unchanged during this ninety day period (i.e., the debtor made no additional deposits to escrow during this time), the insufficiency remained static. *Compare In re Moses,* 91 B.R. at 998. Thus, as there was neither an increase or decrease in the amount of the insufficiency, the defendants could not have improved their position. *Id. See also In re Brooks Farms,* 70 B.R. at 372 (because creditor's claim and obligation both remained constant over the relevant period, there was no improvement in position); *In re Cresta,* 51 B.R. 127 (Bankr.E.D.Pa. 1985), *aff'd,* 58 B.R. 588 (E.D.Pa.1986) (Veterans Administration gained no improvement in position under § 553(b), so debtor could not void any part of the offset of mutual obligations effected during the 90 day vulnerability period). Here also, as the defendant's claim and obligation did not change during the period in question (and I need not quantify what those claims and obligations were), there was no improvement in its position, and § 553(b) does not provide the debtor a means to recover any of the allowed setoff. I find, then, that the landlord/defendants are entitled to retain the security deposit as it represents an allowable setoff under § 553.[13]

## ORDER

AND NOW, this 19 day of January, 1990, upon consideration and for the reasons set forth in the accompanying Memorandum Opinion, the Deputy Clerk in charge of Bankruptcy Operations shall enter judgment in favor of defendants John Boulton and Jeyan Boulton and against the plaintiff, Aspen Data Graphics, Inc.

---

**13.** As a claim subject to setoff under this provision is a secured claim under § 506, under the analysis of §§ 547(b)(5) and 725 *supra* I note that the landlord could not have received less by means of a liquidation in bankruptcy. I do not address whether the transfer of the garnished bank account or court held escrow fund constituted a setoff under § 553.